## ELLISON v. WISEHART and Others.

STATUTE OF FRAUDS.—A having a claim against B for goods sold, C, by a parol agreement between him and A, assumed the payment of the debt, and the same was charged to C. B had no knowledge of the arrangement, and it did not appear that he was discharged by A from the debt, or that his account was credited.

*Held*, that the promise of C was a collateral one, and within the statute of frauds.

APPEAL from the *Madison* Common Pleas.

GREGORY, J.—This suit was commenced by the appellees against the appellant, before a justice of the peace, on an account for divers items of goods sold and delivered. The case was appealed to the Common Pleas. Trial by the court; finding for the plaintiffs; motion for a new trial overruled and judgment. The evidence is in the record.

The goods, the price of which is sued for, were sold and delivered by the plaintiffs to *Susannah Ellison*, the defend-

ant's mother. There is a conflict in the testimony as to the defendant's promise. But the strongest evidence against him is that of *Jackson Wisehart*, one of the plaintiffs. Over the objection and exception of the defendant, the witness testified as follows: "After this bill of goods was bought, defendant came to our store, some time in *April*, can't tell the day, and wanted to see the amount of goods the old lady had bought, and to see the books. I showed him the books. After he examined them, he remarked that she had bought pretty largely, and rather intimated that the thing stood doubtful about our getting our pay. I replied, '*Isaac*, we have sold these goods to the old lady in good faith, and if there is any doubt about our getting our pay for them, I want to know it. You have already intimated to me that the thing stands a little doubtful, and I am now going to proceed and make myself safe if I can.' Defendant replied, 'How are you going to do it?' Says I, 'I am going to enter suit on the old lady immediately.' Defendant said, 'I do not want you to do that, as I have means in my hands, and it may have a tendency to make the old lady worse.' 'Well,' says I, '*Isaac*, I will make you a proposition. If you will assume this debt of one hundred and four dollars and seventy-seven cents, and let me charge it to you, I will let the old lady alone, and wait with you till Christmas for the money.' Defendant hesitated. I again repeated, that I should immediately take steps to make myself safe. Defendant said, 'You may charge it to me, and I will pay.' I charged the account to defendant."

Two objections were made in the court below to this evidence. 1. That it did not tend to prove the items in the account filed as the cause of action. 2. That it was a promise to pay the debt of another, and was void under the statute of frauds, not being in writing.

The solution of the last objection will dispose of the first. It is clear that the promise of the defendant was collateral and within the statute, unless *Susannah Ellison* was dis-

charged from her liability to the plaintiffs. She was not present, and in nowise participated in the arrangement. She had no knowledge of it. It does not appear that she was discharged or the account against her credited.

In *Waggoner* v. *Gray*, 2 Hen. & Mun. 603, A, being indebted to B, who owed C, at the request of B, verbally promised C to pay him the debt due from B to him, but C did not discharge B. *Held*, that A's promise to C was only a collateral undertaking, and void under the statute of frauds.

The defendant could not make *Susannah* his debtor by a voluntary assumption of her debt to the plaintiffs. How could she, in a suit by the plaintiffs against her for this account, set it up as a defense to her liability to them? The plaintiffs did not release her in terms. If she was released, it was the result of the arrangement, and not of any agreement on the part of the plaintiffs. It is true, the plaintiffs were threatening immediate suit, and agreed to let her alone, and wait with the defendant until Christmas. But this was no release.

Mr. *Parson* states the rule thus: "It is quite certain, as has been said, that the party for whom the promise has been made must be liable to the party to whom it is made; and it is equally necessary that he continue liable after the making of the promise. In other words, the promise of the party undertaking must not have the effect, prior to its performance, of discharging the party originally liable. Thus, if goods have been furnished by B to C, and charged to the latter, and A now becomes responsible for them, and B thereupon discharges C, looking to A only, and does this with the knowledge and consent of the parties, this promise of A is to be regarded as an original promise, by way of substitution for the promise of C, which it satisfies and discharges, and not as collateral to the promise of C." 3 Par. Con. 21, 22 and 23, 5th ed. "The mutual assent of all the three parties seems to be necessary to make it an effectual novation or substitution; for so long as the

debtor has made no promise, or come under no obligation to the party in whose favor the order is given, it is a mere mandate which the creditor may revoke at his pleasure." 1 Par. Con. 220, 5th ed.

In the case at bar, the plaintiffs might, at any time before the assent of *Susannah* was given to the arrangement, have disregarded this voluntary assumption of the defendant, and have sued on the original promise. This suit can only be maintained on the ground of a substitution of one debtor for another.

The statute of frauds and perjuries was enacted for the purpose of protecting parties, in certain classes of cases, from having their rights affected by parol testimony, and thereby preventing frauds and perjuries. It cannot be denied that the case at bar is a strong illustration of the importance of such a statute. There were some six persons present at the interview between the plaintiffs and the defendant, at the time of the making of the alleged promise. Three of them sustain the plaintiffs' version of it; the other three give an entirely different account of the transaction.

The judgment is reversed, with costs, and the cause remanded, with directions to grant a new trial, and for further proceedings.

*J. A. Harrison*, for appellant.

*J. Davis*, for appellees.