## CROSBY ET AL. *v.* JEROLOMAN.

STATUTE OF FRAUDS.—*Parol Promise to Answer for Debt of Another.*—G. held a note against S., and J. held a note and mortgage against G., and it was agreed between J. and H. that J. was to surrender to G. the note and mortgage and release him from that indebtedness, and take from him an assignment of the note which he held against S., and H. agreed by parol to pay to J. the latter note. J. accordingly did release the note and mortgage against G. and took an assignment from G. of the note against S.

*Held,* that the contract was within the statute of frauds, which requires a special promise to answer for the debt of another to be in writing, in order that an action may be maintained thereon.

CONTRACT.—*Joint.*—*Several.*—Where a mortgage executed by one of the members of a partnership in his own name, but for the firm, and upon property held in his own name, but in trust for the firm, contained this agreement: "He assuming the payment of said notes, and they being for the purchase-money for the above described real estate; and the mortgagor expressly agrees to pay the sum of money above described," the notes referred to having been given by another person, and the partnership having purchased an interest in the real estate, and thus assumed their payment;

*Held,* that the contract was the joint contract only of all the partners, and not the several contract of each.

PLEADING.—*Joint Liability.*—*Former Recovery.*—Where suit had been brought upon the notes and mortgage against the maker of the notes and the member of the firm in whose individual name the mortgage was executed, and judgment only of foreclosure taken against the member of the firm and a personal judgment against the maker of the notes;

*Held,* that, as judgment on the agreement to pay the notes might have been taken against the partner in that action, the proceedings and judgment taken were a bar to any further suit against him on the contract, and therefore a bar to any suit against his partners, who were only liable jointly with him.

APPEAL from the Cass Circuit Court.

WORDEN, C. J.—This was an action by the appellee against the appellants, and Heman Foster, and Jonathan W. Steele. Issue, trial by the court, and finding and judgment for the plaintiff as against the appellants, Crosby and Welch, and in favor of the defendants Foster and Steele. The parties against whom the plaintiff obtained judgment alone appeal.

The complaint in the cause was in three paragraphs, the first of which alleges in substance, the following facts: that

Crosby *et al. v.* Jeroloman.

in April, 1864, the defendant Steele purchased of Lawrence Ginter certain lands described and lying in the counties of Cass and Carroll, in the State of Indiana, and executed to Ginter his individual notes therefor, and took from Ginter a title bond stipulating for a conveyance of the lands upon the payment of the notes; that afterward the defendants Foster, Crosby, and Welch, bought from Steele an interest in the said lands and other property, with which Steele was doing business, and formed a partnership with him under the style of J. W. Steele & Co., of which Steele was the active member; that afterward, the firm being desirous of perfecting their title to the land by procuring a deed from Ginter, it was understood and agreed between the plaintiff, said firm, and Ginter, that three of the notes thus executed by Steele to Ginter, which yet remained unpaid, viz., two for three thousand dollars each, and one for three thousand eight hundred dollars, should be assigned to the plaintiff; that the name of the firm be changed to Heman Foster & Co., and that a deed for the land be made by Ginter to the firm under the name and style of Heman Foster & Co., and the firm were to assume the payment of said notes and execute to the plaintiff a mortgage on the lands, to secure the payment thereof; that in pursuance of the agreement, the plaintiff accepted an assignment of the notes, and Ginter executed a deed for the lands to the firm, and the firm executed a mortgage to the plaintiff on the lands, to secure the payment of the notes. Copies of the notes and mortgage are filed. That by some misunderstanding or mistake, Foster, who had been delegated and authorized to carry out the arrangement and act on behalf of the firm, procured the deed to be made to Heman Foster, instead of Heman Foster & Co., as had been agreed upon, and in like manner he executed to the plaintiff the mortgage in the name of Heman Foster, corresponding with the deed; that Foster represented to the plaintiff, at the time of the execution of the mortgage, that he was acting for the firm, and that the lands had been conveyed to him in trust for the firm, to whom they

belonged, and not to him individually; that he executed the mortgage on behalf of and as trustee for the firm, and that the obligation in the mortgage to assume the payment of the notes was the obligation of the firm, and not his individual obligation; that his inducement for accepting the obligation was that it was the obligation of the firm, being then informed, and believing, that Foster was insolvent, and that Crosby was the only responsible member of the firm; that afterward the firm consented that the lands be held in the name of Heman Foster, in trust for the firm, and ratified and acquiesced in the execution of the mortgage, and confirmed the same as the act and obligation of the firm, and at different times promised the plaintiff to pay said notes; that the plaintiff has exhausted his remedy against said Steele, and there is yet due and unpaid on said notes the sum of five thousand dollars; wherefore, etc.

The second paragraph alleges the making of the notes by Steele, and their assignment to the plaintiff; that on August 14th, 1865, the defendants were partners, doing business under the firm name and style of Heman Foster & Co., and that for a good and valuable consideration, and, in connection with their partnership business, they did, in writing, assume and undertake and guaranty the payment of said notes, a copy of which written undertaking is set out, being the mortgage described in the first paragraph; that said promise and undertaking was signed by said Foster, in the name of Heman Foster, instead of Heman Foster & Co., but for and in behalf of said firm, and in connection with their business, and as their trustee; that Foster represented to the plaintiff that he was the trustee of the firm, and made said promise in such capacity, and that said obligation was the obligation of the firm, and the plaintiff relied upon the representation, and had no means of knowing the contrary; that all the members of the firm acquiesced in, and ratified said promise, and confirmed the same as the act of the firm, and fully authorized the same before its execution, and confirmed the same afterward; that

there is still due and unpaid four thousand dollars; wherefore, etc.

The third paragraph alleges, that Steele was indebted to Ginter upon the three notes described as in the first paragraph; that Ginter was indebted to the plaintiff in a large amount upon a certain promissory note, and a mortgage upon certain lands purchased of him by Ginter; that the defendants, partners, etc., under the firm name and style of Heman Foster & Co., promised this plaintiff that if he would accept from said Ginter, by assignment, said notes first aforesaid, and release the said Ginter from his said indebtedness on said note and mortgage, the said defendants would assume and pay the said notes given by Steele to Ginter; that in accordance with said agreement, the plaintiff did release Ginter from his said indebtedness and surrender and cancel said note and mortgage, and accept from him by assignment the said Steele notes, which the defendants did assume and promise to pay; that the defendants have frequently since that time acknowledged to the plaintiff their obligation on said notes last named, and promised this plaintiff to pay the same at maturity; that said notes are past due, and as to five thousand dollars thereof remain unpaid; wherefore, etc.

A copy of the notes is made a part of the second and third paragraphs.

The following is the substance of the mortgage executed by Foster, and made an exhibit to the first and second paragraphs of the complaint:

"This indenture witnesseth that I, Heman Foster, of Chicago, Illinois, mortgage and warrant to George M. Jeroloman, of Cass county, Indiana, the following real estate: [description.]

"To secure the payment of three promissory notes [description] all dated April 26th, 1864, payable to the order of L. Ginter, and by him indorsed to said Jeroloman, drawing interest at six per cent., without relief, etc., which notes were given by J. W. Steele to said Ginter for the unpaid purchase-money of said real estate. Said Foster having since their

execution succeeded said Steele in the ownership of said lands, and the deed being made to him therefor, concurrently herewith, he assuming the payment of said notes, and they being for the unpaid balance of the purchase-money of the above described real estate; and the mortgagor expressly agrees to pay the sum of money above secured, without relief from valuation or appraisement laws, and waive the same upon foreclosure hereof.    In witness whereof the mortgagor has hereunto set his hand and seal this 14th day of August, 1865.            HEMAN FOSTER." [SEAL.]

The appellants demurred respectively to the first, second, and third paragraphs of the complaint, but the demurrers were overruled, and they excepted.

The defendants filed a joint answer, as follows:

"They say that the identical mortgage sued upon in the present suit, and which mortgage contains all the promise ever made by any member of said firm to Jeroloman, or on their behalf, if such promise was made, was, on the — day of —, 186–, sued on in this court; Foster and Steele were made parties thereto, and pleaded to the same; issues were thereupon formed; trial was had and judgment rendered; and the plaintiff recovered a judgment of twelve thousand dollars against said Foster and Steele; a complete record of which judgment is filed herewith, and made a part of this answer, including the evidence given in said cause; that the said Jeroloman was fully advised at the time of the alleged facts touching the partnership of said defendants, and knew who composed said firm of H. Foster & Co., as fully then as now.   Nevertheless, he did not make Welch and Crosby parties to said suit, but took judgment thereupon; and because said mortgage, if a firm mortgage, is joint and not several, the defendants say that the same has become merged in the judgment taken against Foster and Steele."

The complaint in the cause thus pleaded makes Steele, Foster, and Ginter parties, and after stating the execution of the notes by Steele to Ginter, and their indorsement to Jeroloman, the plaintiff therein, alleges, "that on the 14th day

of August, 1865, the defendant Heman Foster executed a mortgage to the said plaintiff, on certain real estate described in said mortgage, to secure the payment of said notes, a copy of which mortgage is herewith filed and made a part of this complaint," the same as is in substance above set out. " Plaintiff further says that all of said notes are due, and, together with the interest, wholly unpaid. He therefore demands judgment," etc.

The defendants in that action appeared and answered, and there was final judgment of foreclosure against Foster for a little less than twelve thousand dollars, and a personal judgment against Steele for any balance that might remain after exhausting the mortgaged premises.

A demurrer for the want of sufficient facts was sustained to this paragraph of the answer, and the defendants excepted.

There were other pleadings filed by the defendants, but we have set out sufficient to develop the questions on which the cause must be decided.

We do not understand from the brief of counsel for the appellants that any objection to either the first or second paragraph of the complaint is insisted upon, and therefore no question as to their sufficiency will be considered.

In considering the sufficiency of the second paragraph of the answer, above set out, it becomes necessary to determine whether the third paragraph of the complaint is good; because if the paragraph of the answer be good as to the first and second paragraphs of the complaint, the demurrer thereto should have been overruled if the other paragraph of the complaint be bad. The paragraph of the answer in question was pleaded to the entire complaint. If it sufficiently answered all the good paragraphs of the complaint, it was itself sufficient.

The promise alleged in the third paragraph of the complaint must be taken to have been made by parol, since if it were in writing, the code requires the original or a copy of the writing to be set out. *Harper* v. *Miller,* 27 Ind. 277.

The case made by the third paragraph of the complaint is,

in brief, as follows: Ginter held three notes against Steele, and the plaintiff held a note and mortgage against Ginter. It was agreed between the plaintiff and defendants that the plaintiff was to surrender to Ginter the note and mortgage which he held against him and release him from said indebtedness, and take from him an assignment of the notes which he held against Steele, and the defendants were to pay to the plaintiff the latter notes.

The plaintiff accordingly did release his note and mortgage against Ginter, and took an assignment from Ginter of the notes against Steele.

The question arises whether the contract is not within the statute of frauds, which requires any special promise to answer for the debt of another to be in writing, etc., in order that an action may be maintained thereon.

It will be seen that by the arrangement the original debt of Steele was not cancelled. On the contrary, it was continued in full force and the plaintiff took to himself an assignment of the notes against him.

Where the new contract leaves the original debt, which the defendant promises to pay, in full force, the promise is, as a general rule, held to be collateral and within the statute of frauds.

We quote the following passage from a clear and accurate writer, bearing on this subject: "But it was at one time thought that a verbal promise, even to answer for the debt of another for which that other remained liable, might be available if founded on an entirely new consideration conferring a distinct benefit upon the party making such promise. This idea is, however, confuted by Serjt. Williams in his elaborate note to the case of *Forth* v. *Stanton*. The rule there laid down by him, which has ever since been approved of, is, that the only test and criterion by which to determine whether the promise needs to be in writing, is the question whether it is or is not a promise to answer for a debt, default, or miscarriage of another, for which that other continues liable. If it be so, it must be reduced into writing; nor can the consid-

eration in any case be of importance, except in such cases as *Goodman* v. *Chase*, in which the consideration to the person giving the promise is something which extinguishes the original debtor's liability." Smith Con. 92. Another elementary writer states the law, in this respect, more briefly, as follows: "In these cases the plaintiff must so shape his case, as not to show or admit in his declaration, or upon the face of the pleadings, that there is a principal debtor liable, and that the promise of the defendant is a promise to pay that debt." Addison Con. 60.

This doctrine is believed to be in accordance with the great weight of English and American authorities. *Tomlinson* v. *Gell*, 6 Adol. & E. 564; *Green* v. *Cresswell*, 10 Adol. & E. 453; *Andrews* v. *Smith*, 2 Cromp. M. & R. 626; *Mallory* v. *Gillett*, 21 N. Y. 412; *Fullam* v. *Adams*, 37 Vt. 391; *Curtis* v. *Brown*, 5 Cush. 488; *Ellison* v. *Wisehart*, 29 Ind. 32.

We are quite well aware that there is some diversity in the decisions upon this point, but the general doctrine is undoubtedly as above stated. There are some cases that seem to stand on ground peculiar to themselves, where a parol promise to answer for the debt of another has been held binding, although the original debt was not extinguished by the new agreement.

It was said in the case of *Fullam* v. *Adams, supra,* which was a very thoroughly considered case, that the court believed it would "be found that in all the cases now regarded as sound, where it has been held that a parol promise to pay the debt of another is binding, the promissor held in his hands funds, securities, or property of the debtor, devoted to the payment of the debt, and his promise to pay attaches upon his obligation or duty growing out of the receipt of such funds."

In the case of *Curtis* v. *Brown, supra,* the court say: "When, by the new promise, the old debt is extinguished, the promise is not within the statute; it is not then a promise to pay the debt of another, which has accrued, but it is an original contract, on good consideration,

and need not be in writing. But where the original debt still subsists, and where the plaintiff has relinquished no interest or advantage which has inured to the benefit of the defendant, it is not an original contract, but a contract to pay another's debt, and must be in writing."

There is nothing in the allegations, in the paragraph of the complaint under consideration, that takes the case out of the general rule above stated.

This paragraph is spoken of by the counsel for the appellee as setting up a novation. The pleading falls short of this, for the original debt was not extinguished by the new agreement. The extinguishment of the original debt is one of the essentials of a novation. "By the civil law, a novation arose when a new contract was entered into with intent to dissolve a former engagement, or a new debt was substituted for an old one. The old contract or debt was held to be extinguished by the new one contracted in its stead, whence a novation was included by the civilians amongst the different modes in which obligations were extinguished and discharged. 'A novation may take place,' observes Pothier, 'by the intervention of a new creditor, where a debtor, for the purpose of being discharged from liability to his original creditor, by the order of that creditor, contracts a new obligation in favor of a new creditor.' A second kind of novation, observes Pothier, takes place by the intervention of a new debtor, where another person becomes debtor in my stead, and is accepted by the creditor, who discharges me from the original debt. This kind of novation is called expromission. The old debt is here extinguished by the new one contracted in its stead; for which reason a novation is included amongst the different modes in which obligations are discharged." Addison Con. 816.

We must hold that the third paragraph of the complaint was bad, as setting up a parol contract within the statute of frauds; and, therefore, that the demurrer thereto should have been sustained.

We proceed now to consider whether the second paragraph of the answer was sufficient in bar of the first and second paragraphs of the complaint.

The first and second paragraphs of the complaint count upon the mortgage executed by Heman Foster. They assume that the contract contained in the mortgage, and expressed by the words, "he assuming the payment of said notes, and they being for the purchase-money, being the unpaid balance of the purchase-money for the above described real estate; and the mortgagor expressly agrees to pay the sum of money above described, without relief from valuation or appraisement laws, and waive the same on foreclosure hereof," is the contract of all the partners, and not the contract of Foster merely. The appellants insist that, if the contract be regarded as the contract of all the partners, still it is the joint contract of the partners, and not the several contract of each; and, hence, that any judgment that would bar a suit thereon as against any one, would bar it as to all. It seems to be conceded by the appellants that, under the circumstances alleged in the first and second paragraphs of the complaint, all the partners are bound by the contract thus entered into nominally by Foster, and this proposition we shall take for granted. If the contract is to be held as the contract of all the partners, it must be so held on the ground that it is to be read as if Foster had contracted expressly for himself and partners, or on the ground that his partners would, on general principles of law, be liable with him on the contract.

In either view we think the contract joint, and not joint and several. In other words, if the partners, other than Foster, are bound by the contract, they are bound as joint contractors with him, and not as several contractors, each on behalf of himself alone. If the contract is to be read, in view of the circumstances, as if Foster had, in terms, contracted for himself and partners, the case *Ex parte Buckley in re Clarke,* 14 M. & W. 469, is in point, that the con-

tract was joint only, and not joint and several. See, also, *Doty* v. *Bates*, 11 Johns. 544.

The contract, it will be seen, is in the name of Foster only, and is signed by him alone; and if the partners were all bound thereby, on general principles, as applied to the facts stated, we think it follows, on general principles, that they were only bound jointly with Foster, and not as several contractors.

"Wherever an obligation is undertaken by two or more, or a right given to two or more, it is the general presumption of law that it is a joint obligation or right. Words of express joinder are not necessary for this purpose; but, on the other hand, there should be words of severance, in order to produce a several responsibility, or a several right." 1 Parsons Con. 11.

It is sometimes said that contracts of partners are joint and several. This, in the broad terms which would include all contracts, is a mistaken view of the law. They may, like any other contract, be so framed as to be joint and several. A recent writer on partnership says: "A partner who enters into a contract on behalf of his firm, is not liable on that contract except as one of the firm; in other words, the contract is not binding on him separately, but only on him and his co-partners jointly. One partner may render himself separately liable by holding himself out as the only member of the firm, or by so framing the contract as to bind himself not only as belonging to the firm, but independently of his connection with it; but unless there are some special circumstances of this sort, a contract which is binding on the firm is at law binding on all the partners jointly and on none of them severally." 1 Lindley. Part. 369.

Whatever inference to the contrary may be drawn from the case of *Sheehy* v. *Mandeville*, 6 Cranch, 253, has lost its force, inasmuch as the case has been recently overruled by the court in which it was decided. *Mason* v. *Eldred*, 6 Wal. 231. In the case last cited, the court say, amongst other things, that "the language of Lord MANSFIELD, in giving

the judgment of the king's bench in *Rice* v. *Shute,* Burr. 2,611, 'that all contracts with partners are joint and several, and every partner is liable to pay the whole,' must be read in connection with the facts of the case, and when thus read does not warrant the conclusion that the court intended to hold a co-partnership contract the several contract of each co-partner, as well as the joint contract of all the co-partners, in the sense in which these terms are understood by the plaintiff's counsel, but only that the obligation of each co-partner was so far several, that in a suit against him judgment would pass for the whole demand, if the non-joinder of his co-partners was not pleaded in abatement. The plea itself, which, as the court decided, must be interposed in such cases, is inconsistent with the hypothesis of a several liability."

The contract being joint only, if obligatory upon all the partners, it follows that a judgment rendered thereon against Foster, which will bar a further action thereon as against him, will also bar such further action as against the other parties.

The authorities upon this point are now quite numerous, but we deem it unnecessary to refer to them further than to quote the following passage from the opinion of the court in the case of *Mason* v. *Eldred, supra.* The court say: "The general doctrine maintained in England and the United States may be briefly stated. A judgment against one upon a joint contract of several persons, bars an action against the others, though the latter were dormant partners of the defendant in the original action, and this fact was unknown to the plaintiff when that action was commenced. When the contract is joint, and not joint and several, the entire cause of action is merged in the judgment. The joint liability of the parties not sued with those against whom the judgment is recovered being extinguished, their entire liability is gone. They cannot be sued separately, for they have incurred no several obligation; they cannot be sued jointly with the others, because judgment has been already recovered against

the latter, who would otherwise be subjected to two suits for the same cause."

Was the suit, pleaded in the answer in question, by the plaintiff against Steele and Foster, a bar to any further action against them, or either of them, on the mortgage? If so, it is a bar to any action thereon against all or any of the partners who are assumed to have been bound by the contract contained therein.

The judgment taken in that action was simply for a foreclosure as against Foster, and a personal judgment was taken against Steele for any residue after exhausting the mortgaged premises. We suppose the personal judgment against Steele was based on the ground that he was liable as the maker of the notes, and not upon any supposed liability on the contract contained in the mortgage.

But the complaint was abundantly sufficient, in that action, to have authorized a personal judgment against Foster on the contract contained in the mortgage to pay the money. The law authorized such personal judgment in connection with the judgment of foreclosure. Sec. 634, 2 G. & H. 294.

Having thus sued upon the mortgage and taken the judgment of foreclosure, can the plaintiff now bring an action on the agreement to pay the money, contained in the mortgage? In other words, can he split up his causes of action and bring two suits upon the same instrument and for the same breach?

We have seen that under the pleadings in the suit of the plaintiff against Steele and Foster, the plaintiff might have taken judgment against Foster on the agreement contained in the mortgage. In the case of *Fischli* v. *Fischli*, 1 Blackf. 360, it is said that "whenever a matter is adjudicated, and finally determined, by a competent tribunal, it is considered as forever at rest. This is a principle upon which the repose of society materially depends; and it therefore prevails, with very few exceptions, throughout the civilized world. This principle not only embraces what actually was determined, but also extends to every other matter which the parties might have litigated in the case."

In the more recent case of *Embury* v. *Conner*, 3 N. Y. 511, where many authorities are collected, the court hold the following language: "That the judgment or decree of a court possessing competent jurisdiction, is, as a general rule, final not only as to the subject-matter thereby actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have had decided, can admit of no doubt." See, also, *Duncan* v. *Holcomb*, 26 Ind. 378.

But, independently of the above proposition, we think it quite clear that a party cannot thus split up his cause of action, and bring two suits upon the same instrument, where the entire remedy could have been had in the first suit. This proposition was thoroughly considered in the case of *Secor* v. *Sturgis*, 16 N. Y. 548. We quote the following passages from the opinion of the court in that case: "The principle is settled beyond dispute that a judgment concludes the rights of the parties in respect to the cause of action stated in the pleadings on which it is rendered, whether the suit embraces the whole or only part of the demand constituting the cause of action. It results from this principle, and the rule is fully established, that an entire claim, arising either upon a contract or from a wrong, cannot be divided and made the subject of several suits; and if several suits be brought for different parts of such a claim, the pendency of the first may be pleaded in abatement of the others, and a judgment upon the merits in either will be available as a bar in the other suits. COWEN, J., who delivered the opinion of the court" (in a case cited), "reviews and comments upon many of the cases, after which he makes the following observations: 'I admit that the rule does not extend to several and distinct trespasses or other wrongs, nor, as we have seen, to distinct contracts. It goes against several actions for the same wrong, and against several actions on the same contract.' The true distinction between demands or rights of action which are single and entire, and those which are several and distinct is, that the former immediately arise out of one and the same

act or contract, and the latter out of different acts or contracts. Perhaps as simple and safe a test as the subject admits of, by which to determine whether a case belongs to one class or the other, is by inquiring whether it rests upon one or several acts or agreements. In the case of torts, each trespass, or conversion, or fraud, gives a right of action, and but a single one, however numerous the items of wrong or damage may be; in respect to contracts, express or implied, each contract affords one and only one cause of action. The case of a contract containing several stipulations. to be performed at different times is no exception; although an action may be maintained upon each stipulation as it is broken, before the time for the performance of the others, the ground of action is the stipulation which is in the nature of a several contract. Where there is an account for goods sold, or labor performed, where money has been lent to or paid for the use of a party at different times, or several items of claim spring in any way from contract, whether one only or separate rights of action exist, will, in each case, depend upon whether the case is covered by one or by separate contracts."

The mortgage in question was an entire contract, stipulating for the payment of the money, and pledging the lands therefor. The plaintiff having brought suit on the mortgage, and taken judgment of foreclosure only, when he might have taken a personal judgment for the residue after exhausting the mortgaged premises, it is clear, under the authorities, that he cannot now maintain another action to recover a personal judgment for such residue. Had the stipulation to pay the money been contained in a separate instrument, so that there would have been more than one contract, a very different question would have been presented.

It follows that the facts set up in the second paragraph of the answer, as above set out, were a good bar to the first and second paragraphs of the complaint, and that the demurrer to that paragraph of the answer should have been overruled.

The judgment below is reversed, with costs.

*D. P. Baldwin,* for appellants.

*W. Z. Stuart, S. T. McConnell,* and *M. Winfield,* for appellee.