GEORGE MITTS v. HENRY MCMORRAN.

*Statute of frauds—Promise to pay debt of another.*

1. A promise made at the request of the assignor by the assignee of a contract, who holds the same as security for advances agreed to be made in aid of its performance, to pay a mechanic the amount due him for work on the contract from the *surplus* moneys received, is an original promise, not within the statute of frauds.

2. In such a case, the agreement and intention of the assignor and assignee as to what items should be charged against the fund as

advances will govern, and is a proper subject of inquiry in a suit by the mechanic to recover the sum so agreed to be paid.

Error to St. Clair. (Stevens, J.) Argued January 5, 1887. Decided February 3, 1887.

Assumpsit. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*S. W. Vance,* for appellant:

There was a complete novation, and the agreement of defendant was not within the statute of frauds: *Mulcrone v. American Lumber Co*, 55 Mich. 622; *Finan v. Babcock,* 58 Id. 301.

*P. H. Phillips,* for defendant:

The original debt still remained, making defendant's promise an unwritten collateral one, and therefore void: *Hall v. Soule,* 11 Mich. 494; *Brown v. Hazen,* Id. 219; *Bresler v. Pendell,* 12 Id. 224; *Corkins v. Collins,* 16 Id. 478; *Waldo v. Simonson,* 18 Id. 353.

CHAMPLIN, J. About the month of January, 1877, Nathan S. Boynton entered into a contract with the city of Pittsburgh to manufacture ladders, the contract price amounting to between six and seven hundred dollars. To enable him to carry out his contract he assigned his contract with the city to defendant, McMorran, as security for any advances he might make to Boynton to enable him to complete such contract. Defendant made advances from time to time, and in some instances paid orders drawn on him by Boynton.

Plaintiff is a blacksmith, and after the assignment Boynton employed him to iron one of the ladders, which he did, and his bill therefor amounted to $62.30. Plaintiff was not aware of the assignment to defendant, nor with his agreement to furnish advances to Boynton, and the work was not performed for nor credit given to defendant by

plaintiff for the work and material upon the ladder. Plaintiff testified that he finished work upon the ladder June 1, 1877. Boynton testifies that he shipped the ladders in May, 1877, to Pittsburgh, in McMorran's name as assignee. When they arrived there, the city refused to receive them, and a suit was brought in May, 1879, in the name of N. S. Boynton, plaintiff, for the use of Henry McMorran, against the city of Pittsburgh, which resulted in a judgment for Boynton on the twelfth of March, 1880, for $632. In October, 1880, a petition was presented by Boynton for a rule upon the treasurer of the city to show cause why the judgment should not be paid out of the appropriation to the fire department. In April, 1881, the judgment was paid and satisfied in full. The avails received by the defendant were $503.42.

After plaintiff had finished his job of work for Boynton, he presented his bill and requested payment. He was then informed of the assignment of the contract to defendant, and Boynton offered to give plaintiff an order upon defendant, and plaintiff agreed to take such order. A few days thereafter Boynton drew up and delivered to plaintiff the following order, viz. :

"PORT HURON, MICH., Dec. 27, 1877.

"*H. McMorran:* Pay to the order of Geo. Mitts the sum of sixty-two 30-100 dollars out of any funds that may come into your hands from the Pittsburgh acc't for ladders outside of your bill. N. S. BOYNTON."

A day or two afterwards Mitts presented this order to defendant, who received it, and said, "All right," or that he would pay it when he received the money from Pittsburgh, or that he would pay it if there was anything due Boynton after he got his pay. The testimony was conflicting upon the subject as to what was said when the order was presented to defendant. The defendant, however, kept the order in his possession, and produced the same upon the trial of the cause. After defendant received the money from Pittsburgh, he refused to pay the plaintiff, for the reason that

he had no money after satisfying his own demands against Boynton.

After the plaintiff had closed his proof and rested, the defendant's attorney inquired of plaintiff upon what theory he sought to recover, to which he replied that he sought to recover upon the agreement made at the time the order was presented. Thereupon the defendant introduced his proofs.

After the testimony was introduced the circuit judge charged the jury as follows:

"In this case it is claimed by plaintiff that on or about December 27, 1877, Boynton was indebted to him in the sum of sixty-two dollars and thirty cents; that Boynton at that time gave him the order which has been offered in evidence; that he then presented it to Mr. McMorran, who said he would pay it when he received certain moneys from Pittsburgh. There was no agreement between Boynton and Mitts, or between Mitts and McMorran, that Boynton should be no longer liable, or that McMorran should take Boynton's place as creditor to Mitts. Mr. McMorran, at the time he received the order from Mitts, was not indebted to Boynton, and was in no way interested in the matter of account between Mitts and Boynton. There was no consideration whatever for the provision which Mitts claims was made by McMorran; and that being the case, and the promise not being in writing, the plaintiff can maintain no action upon it, even if the matter occurred as he states. You will find a verdict for the defendant."

The plaintiff's attorney presented several requests to the court to instruct the jury, all of which were refused. The third, eighth, eleventh, twelfth, thirteenth, and fifteenth requests were as follows:

"3. It is for you to determine what the agreement between Mitts and McMorran was. If from all the evidence you find that McMorran agreed to pay Mitts when he got the money from Pittsburgh, and Mitts, relying on that agreement, looked no longer to Boynton for his pay, such an agreement would be valid, and the plaintiff would be entitled to your verdict."

"8. The assignment of the Pittsburgh contract to McMor-

ran, and the order given by Boynton to Mitts on McMorran, must be construed together."

"11. The order drawn by Boynton on McMorran directs McMorran to pay Mitts $62.30 out of any funds that might come into his (McMorran's) hands from the Pittsburgh account for ladders outside of his (McMorran's) bill. It is your duty to determine the meaning of the words 'outside of your bill.' The plaintiff claims that the bill referred to was the advances made by McMorran from time to time to complete the ladders. The defendant claims that it refers to Boynton's indebtedness to McMorran, whether growing out of the assignment of the contract, or out of advances to complete the ladders or otherwise.

"12. If you determine that the 'bill' mentioned in the order was the advances made from time to time by McMorran to complete the ladders, and that, after paying such advances, there remained in his hands enough to pay Mitts' claims, or any part thereof, your verdict should be for the plaintiff for the amount of his claim, or, if there is not sufficient to pay in full, then for so much as remains in McMorran's hands, with 7 per cent. interest since McMorran received the money.

"13. The assignment from Boynton to McMorran of the Pittsburgh contract, and the purposes for which it was made; the conversation between Boynton and McMorran about the Mitts claim before the order was given; the order drawn by Boynton on McMorran and given to Mitts; and the conversation between Mitts and McMorran when the order was presented,—should all be considered together in determining whether or not McMorran agreed to pay Mitts the amount of his claim."

"15. If Mitts had a valid claim against Boynton, and McMorran, with Boynton's consent, assumed and promised to pay Mitts when certain money in which Boynton had an interest came into his hands, and he has received the money, and Mitts, relying on McMorran's promise to pay him, has lost his right of action against Boynton, the plaintiff is entitled to recover."

There was testimony in the case which authorized these requests, and they should have been given.

The circuit judge, we think, misconceived the case as made by the testimony. If the testimony showed only that McMorran promised to pay Boynton's indebtedness to Mitts when he received certain moneys from Pittsburgh which be-

longed to himself, the promise would have been collateral, and void under the statute of frauds. But there was evidence which tended to show that Boynton had placed in defendant's hands a fund or means for obtaining money belonging to Boynton, and, at Boynton's request and by the consent of Mitts, defendant promised Mitts to pay him the debt which Boynton owed him out of the money which should be received by him belonging to Boynton. This would be an original promise, and not within the statute of frauds. The whole contract was assigned to defendant by Boynton as security for advances, and, as to the surplus, he would be indebted to Boynton. His promise to Mitts, at Boynton's request, was not a promise to pay Boynton's debt to Mitts, but a promise to Mitts to pay a debt which he owed to Boynton to him, so far as such surplus was concerned, to the extent of $62.30. *Welch v. Kenny,* 49 Cal. 49; *Berry v. Doremus,* 30 N. J. Law, 399; *Crosby v. Jeroloman,* 37 Ind. 264; *Crim v. Fitch,* 53 Id. 214; *Runde v. Runde,* 59 Ill. 98; *Balliet v. Scott,* 32 Wis. 174; *Buchanan v. Paddleford,* 43 Vt. 64; *Andrews v. Smith,* 2 Cromp. M. & R. 631; *Clark v. Hall,* 11 N. J. Law, 78; *McCray v. Madden,* 1 McCord, 486; *Prather v. Vineyard,* 4 Gilm. 40; *Farley v. Cleveland,* 4 Cow. 432; *Antonio v. Clissey,* 3 Rich. 201; *Putney v. Farnham,* 27 Wis. 187.

In so far as the agreement made at the time the order was delivered to the defendant is in writing, such writing must control. That requested the defendant to pay Mitts $62.30 out of any funds which should come into his hands from the Pittsburgh account for ladders outside of his bill. There is no pretense that Boynton ever changed this request, and it is quite unlikely that defendant would have made a promise so different from its terms as to promise to pay the full amount of the $62.30, regardless of whether there should be sufficient to pay his bill against Boynton or not. This order is dated December 27, 1877, and it is plain that nothing could be

·charged against the fund after that date, save the expenses ·of the litigation, and time spent and disbursements rendered necessary to collect the debt, which would be to the detriment ·of plaintiff's claim.

The plaintiff claimed that he had introduced proof which tended to show that, allowing all legitimate items in defend-.ant's bill properly chargeable against the fund, there was still an overplus which should be applied to the payment of plaintiff's claim, and he contended that there was sufficient ·overplus to pay the whole thereof.    It is in this view of the ·case that the above instructions requested by him were proper ·to be given.

It was also claimed by plaintiff's counsel that the only items the defendant could properly charge against the fund ·in question were those which defendant advanced to enable Boynton to fulfill this contract for ladders, and that his ac-·count for other items should not be included in his bill.    This would depend upon the contract between Boynton and de-fendant, and the intention of those parties.    It was a sub-ject-matter of inquiry, and the evidence as to what items were intended to be included in the bill referred to in the order should have been submitted to the jury as a question ·of fact to be ascertained by them.

It was also claimed, and plaintiff offered to show, that ·other contracts had been assigned to defendant by Boynton · to secure his indebtedness to defendant.    If he could show that such contracts were assigned, and that defendant col-lected or received anything thereon, it would be admissible ·to do so; but if nothing was received from such sources, it would be immaterial to prove the assignment of other con-·tracts.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.