## CHARLESTON.

BARRETT *v.* McALLISTER.

(HOLT, JUDGE, absent.)

Submitted January 21, 1891.—Decided March 14, 1891.

1. ANSWER—PLEADING—APPEAL—RECORD.

Where a plea or answer is referred to in a decree or order in chancery as having come under the cognizance of the court either for the purpose of filing or rejecting it, it thereby becomes a part of the record, and no farther action, by way of exception or otherwise, is necessary upon the part of the defendant to enable him to prosecute an appeal upon the rejection of his plea or answer.

2. ANSWER—PLEADING.

A plea to a bill in chancery must contain averments controverting all matters of fact introduced in the bill which, if true, would destroy the effect of the matter pleaded; and unless such matters are controverted by the plea, it should be overruled.

3. ANSWER—PLEADING—WAIVER—STATUTE OF FRAUDS.

Where a defendant has by his answer waived the statute of frauds and substantially admitted the agreement as set out in the bill, and, on appeal from a decision of the Circuit Court, this Court decides that the plaintiff is entitled to relief founded upon said agreement, the defendant, when the case is sent back, should not be permitted to withdraw his waiver, and file a new plea setting up the statute of frauds.

*Brown & Jackson* for appellants, cited 20 W. Va. 415; 24 W. Va. 763; 31 W. Va. 510; Code, c. 125, s. 20; Mitf. Ch'y Pl. 171; 7 Leigh 402; 1 Dan. Ch'y Pr. 656; 3 W. Va. 138; 5 Munf. 308; 14 W. Va. 261; 9 Gratt. 389; 13 W. Va. 215; 9 Leigh 347; 12 W. Va. 688; 22 W. Va. 381; 14 W. Va. 744; 28 W. Va. 336; Pom. Spec. Perf. § 493.

*Knight & Couch* for appellee, cited 6 W. Va. 336; 9 Leigh 347; 1 Rob. (Va.) 591; 6 Gratt. 673; 12 W. Va. 688; 14 W. Va. 744; 13 W. Va. 215; Sto. Eq. Pl. § 658; 1 Bar. Ch'y Pr. § 114; Dan. Ch'y Pr. 655; Sto. Eq. Pl. 761; 2 Sto. Eq Juri. §§ 755, 756; Sto. Eq. Pl. § 763; Code, c. 125, s. 53; 3 W. Va. 138; 14 W. Va. 261; Sto. Eq. Pl. § 896; 1 Dan. Ch'y Pr. 778, 779; 5 Munf. 308.

LUCAS, PRESIDENT:

This case was before this Court at a former term and was fully decided, as will appear by reference to the report thereof in 33 W. Va. 758 (11 S. E. Rep. 220). In order to understand the issues that were then tried, and the decision reached by this Court, it will be necessary to consider the bill and the answer, and for that purpose I here set them out *in extenso*.

"The plaintiff complains and says that heretofore, to wit, on the 8th day of April, 1887, the defendants William M. McAllister, Samuel C. Tardy, and Samuel C. Tardy, Jr., were seized and possessed in fee of a large tract of land situate in the county of Pocahontas, containing four thousand, seven hundred and eleven acres, made up of several contiguous parcels of land, which was conveyed to said defendants by A. L. Boulware, receiver, and A. R. Blakey, trustee, by deed dated 20th day of April, 1885. (A certified copy thereof is here exhibited, marked 'A,' and made part of this bill.)

"The plaintiff further avers that heretofore, to wit, on the 8th day of April, 1887, he entered into negotiations with said defendants W. M. McAllister, S.C. Tardy, and S.C. Tardy, Jr., through the said McAllister, who acted for himself and as agent for his co-owners aforesaid, and was thereunto duly authorized, for the purchase of two thousand, five hundred acres, part of said tract of land; and the said defendants W. M. McAllister, S. C. Tardy, and S. C. Tardy, Jr., on the day last aforesaid, made a verbal agreement to sell to plaintiff two thousand five hundred acres, part of said tract of land, through the said W. M. McAllister, for the sum of one dollar and twenty five cents per acre, one half to be paid in cash, the balance in twelve

months, with interest. And the said defendants, by the said McAllister, subsequently furnished the plaintiff with a plat of the said four thousand seven hundred and eleven acre tract, showing the different parcels of which it was composed and designated, and described the two thousand five hundred acres, part thereof, embraced in said verbal contract of sale, as composed and made up of lots Nos. 8, 9, 10 and 11, as laid down on said plat, containing, respectively, four hundred and forty acres, four hundred and fifteen acres, five hundred and thirty acres, and five hundred and forty seven acres, and so much of lots Nos. 6 and 7 as laid down on said plat as would make the aggregate of two thousand five hundred acres, by running a line from the most southerly corner of lot No. 6 to the eastern side of lot No. 7, taking that part of lots 6 and 7 lying on the west of said line. (A copy of the plat so furnished plaintiff is here exhibited, marked 'B,' and made a part of this bill.) And the original of said plat will be produced and filed upon the hearing of the said cause, and when filed the plaintiff also prays it may be read as part of this bill.

"The plaintiff further alleges that he required of the said defendants, through the said McAllister, that said contract of the sale should be reduced to writing, and agreed to pay all purchase-money in, if the purchase was consummated. And on the 25th day of May, 1887, the said defendants W. M. McAllister, S. C. Tardy, and S. C. Tardy, Jr., by the said McAllister, who was thereunto duly authorized by his co-owners, made a proposition in writing, subscribed by the said Wm. M. McAllister, to sell to plaintiff two thousand and five hundred acres of timbered land in Pocahontas county, W. Va.—meaning and intending the two thousand and five hundred acres of land above described, and about which said verbal negotiations had previously taken place between the plaintiff and the said defendants through the said McAllister—for the sum of one dollar and twenty five cents per acre cash, if paid within———days from and after the said 25th day of May 1887, to wit, on or before the 9th day of June, 1887. (Said proposition in writing bears date on the 25th day of May, 1887, and is here exhibited, marked 'D,' and made part of this bill.)

"The plaintiff further avers that after the said defendants W. M. McAllister, S. C. Tardy, and S. C. Tardy, Jr., made the foregoing proposition in writing to this plaintiff for the sale of the said two thousand and five hundred acres of land as aforesaid, and before the plaintiff accepted the same as hereinafter stated, to wit, on the 6th day of June, 1887, the said W. M. McAllister went with plaintiff on the said land, and pointed out to him the two thousand and five hundred acres mentioned in said propositions, and which he and his said co-owners offered to sell to plaintiff thereby, and also on the same day pointed out on a plat, a copy whereof is exhibited with plaintiff's bill, the said two thousand and five hundred acres embraced in said propositions, and therein offered for sale as being lots Nos. 8, 9, 10 and 11, containing, respectively, four hundred and forty, four hundred and fifteen, five hundred and thirty, and five hundred and forty seven acres laid down on said plat, and so much of lots Nos. 6 and 7 as laid down on said plat adjoining said lots 8 and 9 as would be required to make up the said two thousand and five hundred acres, by running a line from the most southerly corner of lot No. 6 to the eastern side of lot No. 7.

"And the plaintiff further avers that after the 25th day of May, 1887, and before the 9th day of June, he accepted the said proposition for the sale of the said two thousand and five hundred acres of land, and notified the said defendants W. M. McAllister, S. C. Tardy, and S. C. Tardy, Jr., of his said acceptance ; and the said proposition thereupon became a complete contract of sale, by which the said defendants agreed to sell the said plaintiff the said two thousand and five hundred acres of land for ———— of one dollar and twenty five cents per acre, to be paid in cash on or before the said 9th day of June, 1887.

"The plaintiff further alleges that afterwards, to wit, on the 7th day of June, 1887, he was ready to pay and offered to pay to said defendants W. M. McAllister, S. C. Tardy, S. C. Tardy, Jr., the purchase-money for the said two thousand and five hundred acres of land pursuant to the terms of said contract of sale, and demanded of said defendants a deed therefor ; but the said defendants wholly failed

and refused to excute a deed to plaintiff for the said land, and on the 10th day of June, 1887, the said defendants entered into a contract in writing by which they agreed to sell to the said defendant D. W. Hile, acting for himself and Anthony Hile and Eli Bloom, the said lots Nos. 8, 9, 10, and 11, embraced in the aforesaid contract of sale to plaintiff, and also lot No. 7 and part of lot No. 6, if the said Hile and Bloom should so elect, parts of which two lots were also embraced, as hereinafter described, in the said sale to plaintiff.

"The plaintiff further avers that by the said contract between the said McAllister, S. C. Tardy, and S. C. Tardy, Jr., of the one part, and the said D. W. Hile, acting for himself and for the said Anthony Hile and Eli Bloom, of the other part, the said vendors were to receive two dollars and twenty five cents per acre for the said land; one thousand dollars of which was paid on the date of said contract, and the residue was to be paid upon the execution and delivery of a deed by the vendors to the said vendees.

"The plaintiff further avers that the said defendants D. W. Hile, Anthony Hile, and Eli Bloom entered into negotiations with the said W. M. McAllister, S. C. Tardy, and S. C. Tardy, Jr., for the purchase of the said land, on or about the 8th day of June, 1887, and the said McAllister and Tardys really agreed to sell the said land to said Hiles and Bloom on or about the said 8th day of June, 1887; and because they were getting one dollar per acre more by their contract with the said Hiles and Bloom than by their previous contract with the plaintiff was the reason why the said defendants McAllister and Tardys refused to deliver deed to said land to said plaintiff, and specifically perform their said contract of sale to him. 'A certified copy of the said contract between the said Tardys and McAllister of the one part, and the said Hiles and Bloom of the other part, is here exhibited, marked 'E,' and made a part of this bill.'

"The plaintiff now further alleges that at the time that the said Hiles and Bloom entered into negotiations with the said McAllister and Tardys for the purchase of the said two thousand and five hundred acres of land, and at the

time before the said contract between the said defendants marked 'Exhibit E' was made and executed, the said Hiles and Bloom, and especially the said D. W. Hile, had full notice and knowledge of the previous contract between the said McAllister and Tardys and the plaintiff for the purchase of said land by the plaintiff, and that the plaintiff had accepted the terms of said contract, and was ready to comply therewith, and was endeavoring to obtain a compliance of the said contract from the said McAllister and Tardys. And the said defendants D. W. Hile, Anthony Hile, and Eli Bloom, with such full knowledge and notice of the previous purchase of said land by plaintiff, fraudulently and corruptly conspired and combined with their co-defendants W. M. McAllister, S. C. Tardy, and S. C. Tardy, Jr., to cheat and defraud the plaintiff out of the said land by entering into the aforesaid contract for the purchase thereof themselves. The plaintiff is without remedy in the premises, except in a court of equity, and he is still ready and willing to comply on his part with the terms of his aforesaid contract with the said McAllister and Tardys for the purchase of the said land, and to pay the purchase-money therefor stipulated in said contract, upon the execution and delivery to him of an apt and proper deed, conveying good title to said land; and he desires and demands the execution of said deed, and to this end he prays that the parties named as defendants in the caption of this bill may be made defendants thereto, and required to answer the same; that the said defendants W. M. McAllister, S. C. Tardy, and S. C. Tardy, Jr., may be decreed and compelled to make, execute and deliver to plaintiff an apt and proper deed, with covenant and general warranty, conveying to him the said two thousand and five hundred acres of land embraced in the aforesaid contract of sale to plaintiff, upon the plaintiff paying the purchase-money therefor stipulated in said contract, upon such terms and conditions and in such manner and time as the court shall see fit to prescribe, and that the said defendants D. W. Hile, Anthony Hile, and Eli Bloom may be required and compelled to join in said deed to convey any interest, legal or equitable, they may have in said land; or if, for

any reason, such specific performance of the plaintiff's contract for the purchase of said land is not practicable, that the court will adjudicate and decree that the sale made by the said McAllister and Tardys to the said Hiles and Bloom was a sale made for the plaintiff's use and benefit, and he be allowed to collect and receive the sum of two thousand and five hundred dollars of the purchase-money that the said Hiles and Bloom are to pay for said land by the terms of their contract, being the excess of purchase-money over and above what the plaintiff ———— to pay therefor by the terms of his contract, and he may have such personal decree against the said defendants, or any or either of them, and against the said land, to secure and enforce the payment of the said two thousand and five hundred dollars with interest from the said 10th day of June, 1887, as is right and just, and a court of equity can give ; and for all such other, further, and general relief and decree as is meet and proper, and the circumstance of the plaintiff's case may require."

The answer is as follows :

"The separate answer of Wm. M. McAllister to the bill of complaint of Frank Barrett, exhibited against him and others in the Circuit Court of Pocahontas county : This respondent, saving and reserving to himself the benefit of all proper exceptions to said bill, for answer thereto says that it is true that he and his co-defendants Samuel C. Tardy and Samuel C. Tardy, Jr., on the 8th day of April, 1887, were seised and possessed in fee of a tract of land containing four thousand seven hundred and eleven acres, lying in the county of Pocahontas, and that the same was conveyed to them by the deed from A. L. Boulware, receiver *etc.*, a copy of which is filed with said bill, marked 'Exhibit A.' Respondent denies the allegation of said bill that on the said 8th day of April, 1887, he, on his own account, or for himself and his said co-owners, entered into negotiations with the plaintiff for the sale to him of two thousand and five hundred acres of said land, or that on that day, on his own account, or for himself and for his co-owners, he entered into any agreement with the said plaintiff for the sale of any part of said tract of four thousand seven hundred and eleven acres of land at any price per acre or in gross.

"Respondent further denies that he at any time after the said 8th day of April, 1887, furnished the said plaintiff with a plat of said land showing the said two thousand and five hundred acres, or designated the part of said land which would go to make up said two thousand and five hundred acres, or that any line of said land was agreed upon between them to designate any certain part thereof which respondent was willing to sell.

"Respondent, further answering, denies that he and his said co-owners were ever required by the said plaintiff to put said alleged verbal contract into writing. On the contrary thereof, respondent says that all that was ever said by the said plaintiff on the subject was a request by him contained in a letter of date May 11, 1887, in this language: 'I do not want an option, but simply write me that you will sell to me at one dollar and twenty five cents per acre, if I come before sold, and that you will hold it open fifteen days for me.' (Said letter is herewith filed as a part of the exhibit, marked 'A.') Respondent admits that he wrote and signed the letter exhibited with the plaintiff's bill marked 'Exhibit D,' in which he proposed for himself and his co-owners to sell two thousand and five hundred acres of timbered land off of said tract of four thousand seven hundred and eleven acres, at one dollar and twenty five cents per acre, if paid within fifteen days, but no body of said land had then been or was thereafter designated as said two thousand and five hundred acres. When respondent went on said land with plaintiff and others on the 6th day of June, 1887, he said to the the plaintiff that any sale he would make would have to embrace lots 8, 9, 10, and 11, but no part of lots 6 and 7 was specially designated, and no line through them agreed upon. Respondent, further answering, denies that the said plaintiff on the 7th day of June, 1887, accepted the said proposition contained in Exhibit D, and was then or on the 8th or 9th day of June, 1887, ready to pay and offered to pay to respondent and his said co-owners, or either of them, the purchase-money for the said two thousand and five hundred acres of land pursuant to the terms of said alleged contract of sale. On the contrary thereof, said plaintiff made no tender of any money on account of said alleged contract, but respond-

ent said to him, if he would tender the money in cash mentioned in said conditional. offer contained in Exhibit D, that he and his co-owners would make to said plaintiff a good and sufficient deed before taking possession of the money, and that the plaintiff in the mean time might deposit the money in any hands he saw fit. From what the respondent had learned from the plaintiff and other sources, he was satisfied that the said plaintiff was a mere adventurer, without the pecuniary ability to buy said land and pay for it; but, after the said alleged acceptance of such conditional offer by the said plaintiff, to wit, on the 10th day of June, 1887, respondent told him if he would tender him the money he would, together with his co-owners, convey said land as aforesaid. It is true that on the 10th day of June, 1887, respondent sold to the defendant D. W. Hile, acting for himself and Anthony Hile and Eli Bloom, two thousand five hundred and fourteen acres of said four thousand seven hundred and eleven-acre tract, at two dollars and twenty five cents per acre, as shown by Exhibit E. of the said bill; but respondent denies that any negotiations for said sale were commenced with said Hile on the 8th day of June, 1887, as alleged in said bill, or that any negotiations for the said sale, or any such sale, was made until the said 10th day of June, 1887; and he also denies that any contract made by him with said Hile was the reason why he and his co-owners did not sell to the plaintiff.

"Respondent alleges that the said plaintiff was a mere adventurer, and unable at any time during the pending negotiations to complete said purchase by the payment of the money therein conditionally provided for. Respondent denies that he has been guilty of any fraud or unfair dealings in the matter, but is satisfied that the said plaintiff, throughout the transaction, did not act in good faith, but was guilty of deceit, and by trickery attempted to get title to said land. And, having fully answered, respondent prays that said bill may be dismissed, and that the costs be awarded him.   WM. M. McALLISTER."

A large mass of testimony was taken, and the case was decided on the 19th day of June, 1889. The court below was of opinion that the plaintiff was entitled to relief, and

that the defendants, D. W. Hile, Anthony Hile and Eli Bloom, were purchasers with notice of the prior equity of the plaintiff; that they held the land subject to the claim of the plaintiff; and that the sale by McAllister to them at the advanced price was a sale for the benefit of the plaintiff; and it was therefore decreed he should recover of the defendants the sum of two thousand and five hundred dollars, with interest, that being the excess of the sale made to D. W. Hile, Anthony Hile and Eli Bloom over the sale made by the plaintiff. The defendants were given sixty days to pay the sum decreed against them, and, in case of default at the end of that time, the land was decreed to be sold by a commissioner of the court. This court reversed this final decree of the Circuit Court, upon the ground that the said Hiles and Bloom were proceeded against as non-residents, and no personal decree could be taken against them, and that such decree should have been against McAllister and the two Tardys only; and, further, that the land itself could not have been subjected to sale, so far as the interest of Walker, who had purchased one fourth of it, was concerned, because he had not been made a party. The case was sent back to the Circuit Court of Pocahontas county with instructions to proceed as indicated in the opinion and further in accordance with the principles and practice governing courts of equity.

When the case went back, McAllister and the two Tardys, (the suit having been dismissed as to the other two non-resident defendants) tendered a plea, as follows:

"And the said defendants, W. M. McAllister, Samuel C. Tardy and Samuel C. Tardy, Jr., for plea in this behalf, come and say that they are in no wise bound by the alleged contract filed with the plaintiff's bill bearing date on the 25th day of May, 1887, because they say that said alleged contract is in contravention of the statute of frauds and perjuries, and that under and by virtue of the said alleged contract no parol proof can lawfully be heard in support of the demand of the said plaintiff; and this they are ready to verify."

As appears by the final decree, which is now before us for review, the plaintiff objected to the filing of this plea,

and the chancellor sustained the objection and rejected the plea and then proceeded to render a personal decree against W. M. McAllister, Samuel. C. Tardy, Sr., and Samuel C. Tardy, Jr., in favor of the plaintiff, for the sum of two thousand and five hundred dollars, with interest thereon from the 1st day of July, 1887, subject to a credit of one hundred and thirty two dollars and five cents, on account of costs recovered by defendants against plaintiff in this Court on appeal as aforesaid. McAllister and the Tardys have appealed from this final decree, and we are now to determine the rights of the parties on this appeal.

It is objected upon the part of the appellee that the plea tendered having been rejected is no part of the record, and can not be considered by this Court, because, as it is alleged, it was not made part of the record by an order of the court or by any exception of the defendants or by any indorsement of the clerk. This view, I think, is erroneous; and I think the error originates in confounding the practice in a court of chancery with that at common-law. I have always understood the practice to be as decided in *Craig* v. *Sebrell*, 9 Gratt. 131, that where any pleading or deposition is referred to in the decree, it is thereby made a part of the record. If this were not so, there would be no method known to the chancery practice whereby a plea, which has been rejected by the court, could become the subject of review in the court of appeals, since correct chancery practice does not permit a bill of exception to be taken except on trial of an issue out of chancery. Even in that case a bill of exceptions is not permitted by the English practice. Daniel Ch'y Pr. 1119.

In the case of *Ex parte Story*, 12 Pet. 339, it was decided that "a bill of exceptions is altogether unknown in chancery practice," and a *mandamus* to compel the Circuit Court to sign such a bill was refused.

In our own Code, it is provided in s. 9, c. 131: "In the trial of a case at law, in which a writ of error or *supersedeas* lies to the Court of Appeals, a party may except to any opinion of the court, and tender a bill of exceptions, which (if the truth of the case be fairly stated therein) the judge shall sign, and it shall be a part of the record of the case."

It will be observed that not a word is here said about a bill of exceptions in a suit in chancery, and for the obvious reason that the chancery practice does not require a bill of exceptions. All that is necessary is for the answer or other pleading to be referred to in some order or decree of the court, as having come under the judicial cognizance of the chancellor.

We are told by Mr. Daniels: "In stating deeds or other written instruments in a bill, it is usual to refer to the instrument itself in some such words as the following, viz., 'as by the said indenture, when produced will appear.' The effect of such a reference is to make the whole document referred to part of the record."

The true rule which excludes pleadings or depositions from the record is laid down by this Court in *Hilleary* v. *Thompson,* 11 W. Va. 113: "Affidavits and depositions not referred to in any decree or order in a chancery suit are no part of the record." So, also, Judge HAYMOND says in *Kable* v. *Mitchell,* 9 W. Va. 492: "There are a number of affidavits and depositions accompanying the record, which are no part of the record, as they are not referred to in any decree or order entered in the cause."

Without multiplying authorities, I take this to be the true rule in chancery: that where a plea or answer is referred to in a decree or order as having come under the cognizance of the court, either for the purpose of filing or rejecting it, it does thereby become part of the record, and no further action, by way of exception or otherwise, is necessary upon the part of the defendant to enable him to prosecute an appeal upon the rejection of his plea or answer. It is true, as cited by counsel, that there is to be found in the case of *Ruffner* v. *Hewitt,* 14 W. Va. 744, a *dictum* to the contrary. But it will be observed that nothing is said of the point in the syllabus, and we must regard it therefore as an inadvertence, arising from a failure on the part of the judge who delivered the opinion to discriminate between the practice at law and in chancery.

Fortunately we have a case in our own Court exactly in point. In *Stephens* v. *Brown,* 24 W. Va. 234, the question arose upon the refusal of the lower court to permit an an-

swer to be filed, and it was contended by the appellees that the answer was no part of the record. To this position this Court replied as follows: " It is here insisted that the answer is no part of the record. If it is not, I know of no way in which it can be made a part of the record, except by spreading it at length on the chancery order-book, as a bill of exceptions is unknown in chancery practice. The order shows that the defendants tendered their answer, to the filing of which the plaintiffs objected, and the court sustained the objection, and refused to permit the answer to be filed. The clerk certifies that the foregoing answer was the one tendered and refused. It is as thoroughly identified as an exhibit or as depositions are in any chancery record. The answer is clearly a part of the record."

The next question to be considered is: Is the plea sufficient in substance, or is it in that regard fatally defective? It will be observed that, as there can be neither demurrer nor special replication to a plea in chancery, the rules are more strict in regard to the necessary averments which should be embodied in the plea. Thus in a plea of purchase for valuable consideration without notice it is not sufficient merely to state that the defendant is such a purchaser. He must state in the plea that the person from whom he purchased had, or pretended to have, a right to convey; that there was a proper conveyance; that a valuable consideration was paid; and that the defendant had no notice of the claim of the plaintiff. Daniel Ch'y Pr. 611, 612. Moreover, if the defendant in his answer should have admitted facts amounting to notice, his subsequent plea would have to be overruled. Id. 611.

Tried by these tests, it will be seen that the plea we are now considering is not a good defence to the plaintiff's bill. Looking at the allegations of the bill, the claim for relief does not rest exclusively on the contract of the 25th of May, 1887, but it charges that this contract was supplemented by subsequent transactions, whereby the effect of the statute of frauds was avoided. The plea should by averment have negatived any such subsequent transactions. Otherwise, if this were a good plea, the plaintiff would

have been enabled to take issue upon it, and the decision of such issue would be conclusive of the case. I think, therefore, that the court below did not err in rejecting this plea. Daniel, Ch'y Pr. 609, 610, 613.

But, in point of fact, the whole issue attempted to be raised by the plea was *res judicata* under the former decision of this Court. By examining the opinion in connection with the syllabus of the former appeal, it will be found that it is there decided that the defendants had waived the defence of the statute of frauds. "The whole body of agreement," says Judge BRANNON in delivering that opinion, "except in that respect, is admitted." Moreover, in the syllabus the Court says : "When an answer admits an agreement for the sale of land as alleged in the bill, though it be oral, the defendant must plead the statute of frauds and perjuries, or the answer must claim its benefit; otherwise he is held to have admitted the agreement, and renounced the statute's benefit. If the answer denies generally the making of such agreement as that alleged in the bill, the plaintiff must prove an agreement valid under the statute; but if the answer admits an agreement, substantially the same as that alleged in the bill, and differing from the agreement alleged in the bill in points not essential, the answer is treated as admitting the agreement, and, unless the defence under the statute is made by plea or answer, the statute will not avail the defendant." And the facts were found and decided to be as thus stated in the syllabus, viz., that the defendants had substantially admitted the agreement by their answer, and had thus waived the defence of the statute of frauds.

This being true, the question arises : When the case goes back to the Circuit Court for no other purpose than to carry out the mandate of this Court, can the defendants so amend their pleadings as to take advantage of a defence which they had formerly waived? I think not. Having waived the defence once, it is too late to avail themselves of it after the case has come back from the court of appeals.

In the case of *Lanier* v. *Cocke*, 6 Munf. 580, it was held that, after the court of appeals had passed upon a case, and remanded the cause for a new trial upon the general issue,

a demurrer to the declaration should not be entertained in the court below. In *Deneufville's Adm'r* v. *Travis' Adm'r*, 5 Gratt. 28, upon an appeal from a final decree made upon a report of a commissioner, to which there were various exceptions, and the appellate court decided it was error not to sustain one of the appellant's exceptions, and the decree was reversed, and the cause remanded for the necessary inquiries to be made in relation to the subject of that exception, it was held that the decree concluded all other questions, and no other inquiries could be gone into. It is quite clear, therefore, that, even if this plea had been a good plea in all respects to the plaintiff's bill, the defendants should not have been permitted to withdraw their waiver of the statute of frauds and make up a new issue.

In their brief counsel for appellants have assigned as error that the plaintiff was permitted to dismiss his bill as to the non-resident defendants; but I am of opinion that as the resident defendants had in no manner indicated any desire for any relief as against their co-defendants, and as the plaintiff had elected to take no decree against them, there was no error in permitting him to dismiss them from the suit.

For these reasons the decree of the Circuit Court of Pocahontas county is affirmed.

AFFIRMED.