EMMETT HAGADORN v. THE STRONACH LUMBER COMPANY (A CORPORATION).

*Statute of frauds—Guaranty—Evidence.*

1. The statute of frauds does not apply to sales made *entirely* upon the credit of a third person, with his knowledge of such fact, and with the expectation that he would pay for the goods; citing *Larson v. Jensen,* 53 Mich. 427; *Morris v. Osterhout,* 55 Id. 262; *Heyn v. O'Hagen,* 60 Id. 150.

2. In such a case evidence that the agent of the third person took possession of a portion of the goods for the reason, as stated, that his principal would have to pay for them, is admissible, as tending to support the plaintiff's claim that the goods were sold on the credit of the principal, and that he so understood it.

Error to Manistee. (Judkins, J.) Argued May 6, 1890. Decided May 16, 1890.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Ramsdell & Benedict,* for appellant, contended as stated in the opinion, citing no authorities.

*Dovel, Smith & Smurthwaite,* for plaintiff, cited the authorities cited in the opinion.

CAHILL, J. Plaintiffs sued the defendant for goods furnished to the firm of McNiel & Griffiths during the winter of 1888–89 under the following circumstances: McNiel & Griffiths entered into a contract with the defendant in the fall of 1888, by which they were to cut the pine timber on certain descriptions of land, and put the same afloat on or before April 1, 1888, provided there was good sleighing. They were to receive $3.75 per

thousand for their work, payable as follows: $1.25 per thousand when the logs were cut and skidded, $2 per thousand as fast as the logs were afloat in the Manistee river, and 50 cents per thousand when the job was satisfactorily completed.

In making this contract the defendant was represented by Louis Crawford, whose authority to make the same was afterwards fully ratified by the company. Crawford was what is called in the record "a walking boss," or woodsman, who had charge of that part of the defendant's lumbering business in Missaukee county, involved in a general supervision of the camp. He sometimes purchased supplies of farmers and others, paid off the men, etc. During the same winter the defendant had another logging camp in the same county, which Mr. Crawford had charge of. In the month of December, McNiel & Griffiths found themselves unable to proceed with the contract for lack of means. They notified Mr. Crawford of this fact, and a few days afterwards he appeared at their camp. This was on December 28. Mr. McNiel testified that he then said to Mr. Crawford:

"We can't go on with this contract. There is no use talking. We can't pay our supply bills, and had better stop right now. We don't owe anything to amount to anything now, and if we go on we can't do the job. Crawford said, 'What is the trouble?' I said, 'We can't get no supplies—we can't get any one to supply us;' and I said, 'I think we had better quit.' And he said, 'If supplies is all that is stopping you, I can get all the supplies you want.' And I said, 'Where?' And he said, 'I can get them at Emmett Hagadorn's, of Fife Lake.' I said, 'All right; if you get us our supplies and pay our men we will go ahead, and do the best we can with the job. If you don't do that we had better stop right now.' I said, 'Every day we work the worse off we will be. He said, 'If that is all that is stopping you, go ahead."

"Q. What was the trouble? Why couldn't you go on?

"A. We had no money to go on with.

"*Q.* What did you do after this talk there?

"*A.* Well, then Mr. Crawford he gave me an order,—a line to Mr. Hagadorn for supplies,—and he said, 'You go there, and you will get all the supplies you want, and it is all right.'"

The line referred to was as follows:

"MANTON, December 28, 1888.
"EMMETT HAGADORN, ESQ.,
"Fife Lake, Mich.

"*Dear Sir:* The bearer, Mr. McNiel, is putting in some logs for us, and I have recommended him to you for supplies, and he will trade with you. Can you agree on prices and terms. He is all O. K.

"Yours, L. P. CRAWFORD."

Mr. Griffiths, called as a witness for the plaintiff, testified substantially as did Mr. McNiel.

The plaintiff, when called as a witness, testified that on December 29, 1888, Mr. McNiel called on him with this note from Mr. Crawford; that he was acquainted with the defendant company, and knew that Mr. Crawford was its managing man there in the woods; that he had sold goods during the season for the defendant's other camp; that he let Mr. McNiel have, on December 29, a quantity of goods, amounting to \$155.21, which were charged on his books as follows: "Stronach Lumber Company. McNiel & Griffiths." That a few days after this, Mr. Crawford on his first trip up after McNiel had been in, called at the store.

"He asked me if McNiel had been in, and I told him he had; and he wanted to know if he got anything, and I told him he had. I forget whether it was one or two loads. He said that 'It was all right.' He said, 'We will have to furnish them supplies.' I told him that I would not furnish supplies to them in any other way."

The plaintiff further testified that he told Mr. Crawford that he would furnish McNiel & Griffiths goods under the understanding that they were to be charged to the defendant, but not under any other arrangement.

"*Q.* In other words, you would extend the credit to the Stronach Lumber Co?

"*A.* Yes, sir."

From the time this account opened until February 1, plaintiff furnished to McNiel & Griffiths goods to the amount of $403.78. In the mean time Mr. Crawford had informed Mr. Thorsen, secretary and treasurer of the defendant company, and who is its general manager in Michigan, of the fact that McNiel & Griffiths were getting goods of the plaintiff, and when McNiel & Griffiths called upon Mr. Thorsen, about February 1, for money he gave them money to pay their men, but told them that they would themselves look after the payment of plaintiff's bill, and asked them the amount of it. McNiel & Griffiths consented to this, and Mr. Thorsen wrote to the plaintiff, asking for his bill, which was furnished him, and Mr. Thorsen sent a check to pay it. The plaintiff continued to render monthly statements of his account with McNiel & Griffiths for the months of February and March, which were received by Mr. Thorsen at his office in Manistee, without objection, until April 6. At that time the work on the job was finished. Mr. Thorsen on that day wrote to the plaintiff the following letter:

"J. Thorsen, Pres. "W. B. Thorsen, Sec'y & Treas.
"Stronach Lumber Co.,

"Manufacturers of Lumber, Shingles, and Salt.

"Stronach, Mich., April 6, 1889.
"Emmett Hagadorn, Esq.,
"Fife Lake, Mich.

"*Dear Sir:* Yours of the 4th inst. at hand. McNiel & Griffiths finished their job considerably in debt to us, which, of course, leaves no balance for outside indebtedness. We have not seen either McNiel or Griffiths since the job was finished.

"Yours respectfully,
"Stronach Lumber Co.
"W. R. Thorsen."

The statements of account rendered by plaintiff to the defendant were headed as follows:

## " STATEMENT.

" FIFE LAKE, MICH., Mar. 6, 1889.
" Stronach Lumber Co., Per McNiel & Griffiths.
" To EMMETT HAGADORN, DR.,
" Wholesale and Retail Dealer in General Merchandise.
" N. B.—No accounts allowed to run over one month unless otherwise arranged. Camp Supplies a Specialty. (Duplicate.)"

At the bottom of the bill rendered March 6, were the words, "By request of Mr. Crawford." As to the manner of keeping the account, the plaintiff testified that for convenience he kept the McNiel & Griffiths account separate from the other account that defendant had on his books until the end of the month, when he transferred it to defendant's account in the ledger; and in rendering his statements he rendered separate statements for the separate camps. McNiel testified that when they broke camp in the spring they had a quantity of supplies on hand which had been bought from the plaintiff; that Mr. Crawford insisted upon taking possession of these supplies, and did so, saying that the defendant would have to pay for them, and ought to have them. After the arrangement testified to by Mr. McNiel as having been made with Crawford on December 28, Crawford paid McNiel & Griffiths' men, with the exception of $400 which was given to McNiel for that purpose.

Upon this evidence the circuit judge submitted the case to the jury, under instructions to determine whether the goods were sold by plaintiff to the defendant, or on the strength of the defendant's credit, or whether the goods were sold to McNiel & Griffiths and the plaintiff looked to the defendant only as guarantor of the account. The jury were instructed as follows:

"Now, I think like this, gentlemen: There is only one ground, under the evidence in this case, on which the plaintiff can recover, if he can recover at all, and that would be this: If this man Crawford was the duly-authorized agent of the defendant, and had the power to make this purchase, or if he had not the express power, but made it with the knowledge and acquiescence of the defendant; if he came around there and had this talk, and gave the plaintiff to understand, and the plaintiff, really and in good faith, did so understand and believe, that he was to look to the defendant company for his pay; and these bills were rendered from time to time, and the defendant company or its authorized agent understood the same also, and believed or supposed that they were liable, and that the plaintiff so understood it also,—then I think the plaintiff can recover for the amount of his claim; because if plaintiff made this claim against the defendant under this talk, and afterwards presented bills, and defendant so understood it, and knew what he supposed was the case, and that the goods were being sold on defendant's credit, and all parties relied upon it and acted upon it, then that amounted to a contract, by implication at least, that defendant would pay for the goods; and having received the goods in that way, and the bills, etc., and acquiesced in it, it would be binding upon all concerned, it seems to me, in a case of that kind, if that is true."

Counsel for defendant claim that the evidence does not tend to make a case against the defendant; that it clearly appears that plaintiff sold the goods to McNiel & Griffiths; that he relied only upon defendant as guarantor; and that the case is clearly within the statute of frauds. To this we cannot agree. Taking it all together, we think there was evidence from which the jury could legitimately find that the plaintiff, and the defendant through its officers and agents, understood that these goods were being furnished entirely on the credit of defendant, and that the defendant would pay for them. If so, the statute of frauds would not apply. The cases cited by plaintiff's counsel are in point: *Larson v. Jensen*, 53 Mich. 427 (19 N. W. Rep. 130); *Morris v. Osterhout*, 55 Id. 262

(21 N. W. Rep. 339); *Heyn v. O'Hagen,* 60 Id. 150 (26 N. W. Rep. 861). We think the case was fairly submitted to the jury.

Objection was made by defendant to the evidence of McNiel as to his conversation with Crawford at the time the latter gave him the letter to the plaintiff, on December 28. We think this testimony was competent. Crawford was the accredited agent of defendant. His action, and what he said to McNiel in relation to furnishing him money and supplies, would have a legitimate bearing upon the question of what he said to the plaintiff at the time when the latter says Crawford called at his store and said it was all right to let McNiel & Griffiths have goods. So, also, the testimony of McNiel as to Crawford's claiming the supplies on hand at the close of business. If Crawford claimed such supplies, and gave as a reason therefor that defendant would have to pay for them, that was a circumstance tending to support the plaintiff's claim that the goods were sold on the credit of defendant, and that defendant so understood it.

The judgment is affirmed, with costs.

The other Justices concurred.