No. 13,861.

THE BOARD OF COMMISSIONERS OF GIBSON COUNTY *v.* THE CINCINNATI STEAM HEATING COMPANY.

STATUTE OF FRAUDS.—*Building Contract.*—*Agreement Between Owner and Sub-Contractor.*—*Collateral Contract.*—Where the owner of property undertakes to pay for work and materials to be subsequently done and furnished by a sub-contractor in order to secure the completion of a building where the principal contractor has failed to carry on the work, the promise is an original one, and not within the statute of frauds, and is enforceable.

COUNTY COMMISSIONERS.—*Erection of Court-House.*—*Minor Changes Without Plans or Specifications.*—*Power of Commissioners to Make.*—*Presumptions.*—Under section 4243, R. S. 1881, requiring plans and specifications for the construction of public buildings to be prepared and filed before advertising for proposals, a board of county commissioners may make a change in a matter of detail, such as the heating or lighting of a court-house, in process of erection, without requiring plans and specifications of the proposed change to be filed, and without advertising for proposals for the same. No important general change in the plan of the building can be thus made, only changes in matters of detail. It must be presumed that the board of commissioners neither violated the law, nor acted in bad faith in ordering changes in a matter of detail, and in the absence of countervailing facts, it must be also presumed that the changes were of such minor importance and so necessary that it was not only the right of the board to order them made, but that it was its duty to cause them to be made.

From the Knox Circuit Court.

*L. C. Embree,* for appellant.

*M. W. Fields* and *J. W. Ewing,* for appellee.

ELLIOTT, J.—On the 25th day of September, 1883, the board of commissioners of Gibson county entered into a contract with Joseph G. Miller for the erection of a court-house. The plans and specifications were adopted at a meeting of the board on the 7th day of August, 1883, and notices inviting proposals for building the court-house were published for more than six weeks prior to the time the contract was awarded. The notice was published in a newspaper of general circulation in the county of Gibson. Miller entered upon the work under the contract, and on the 29th day of December, 1884, made a contract with the appellee to furnish a steam heating apparatus and appliances for the court-house. The plans and specifications agreed upon by Miller and the appellee were different from those adopted in the first instance by the board of commissioners, but what the differences were does not appear. The appellee entered upon the work required by its contract and furnished labor and material. On the first day of April, 1885, it received from Miller, in part payment, three thousand dollars, and on the 20th day of June of that year there was owing from Miller to the appellee the sum of two thousand and two hundred dollars; this sum Miller failed to pay, although it had been due for more than two months. The architects, McDonald & Bro., refused to issue an estimate, and the appellee tendered to the board a bond conditioned as follows:

"The condition of this obligation is such, whereas the said Cincinnati Steam Heating Company has a contract with one Joseph G. Miller, who is chief contractor for the erection of a court-house in Gibson county, Indiana, to place certain steam heating apparatus in said court-house, for which it is to receive the sum of $6,665 in installments

equal to eighty-five per cent. of the value of the work done and material furnished as said job shall progress, and as there is now due to it the sum of $2,200, on said work on said contract, which said Miller has failed to pay, the said commissioners having refused to advance any more direct to said Miller on his said contract, but being willing and desirous of advancing to the said The Cincinnati Steam Heating Company direct the money now due, and to become due for its said work upon the approval of said architects, and propose to advance at once, at next meeting of said commissioners, the $2,200 aforesaid; now, therefore, if the said The Cincinnati Steam Heating Company shall complete its said job of work in accordance with the plans and specifications and terms of its said contract, and the work so completed shall be accepted by the McDonald Brothers, these presents shall be void, otherwise to remain in full force and virtue."

The board accepted the bond while in session but made no entry of record. After the acceptance of the bond the board caused a warrant to issue to the appellee on which it received two thousand two hundred dollars. The order directing the warrant to issue reads thus: "Comes now Kenneth McDonald, architect on new court-house, and files estimate for work done and materials furnished for steam heating in the sum of twenty-two hundred dollars by Joseph G. Miller, the estimate having been assigned to the Cincinnati Steam Heating Company, and also showing that Joseph G. Miller has been previously paid the sum of $80,679, and making a total allowance of $82,879, and after hearing the evidence, and being fully advised, it is found that said claim ought to be allowed. It is now ordered that the Cincinnati Steam Heating Company be allowed the sum of twenty-two hundred dollars."

The appellee fully performed its part of the contract, and on the 20th day of December, 1885, demanded an estimate, but the architect refused to certify one. On the 1st day of

February, 1886, the board entered an order declaring the court-house completed and ready for occupancy, and, pursuant to such order, possession was taken by the county officers and the records placed in the building. The county, by its officers, occupies the court house and uses the steam heating apparatus placed in it by the appellee. On the 14th day of April, 1886, the appellee presented its claim for the remainder due upon its contract, but its claim was rejected. There remains owing the appellee the sum of fourteen hundred and sixty-five dollars.

The appellants' counsel contends that the board had no authority to contract for the steam heating apparatus, for the reason that no plans and specifications were ever placed on file in the auditor's office, and no notice was published inviting proposals for furnishing the court-house with steam heating apparatus. This contention is based upon the provisions of the statute requiring plans and specifications for the construction of public buildings to be prepared and filed before advertising for proposals. Section 4243, R. S. 1881. We can not accept the views of counsel as correct. In our opinion the statute was not intended to prevent changes in plans and specifications from being made in cases where it becomes apparent in the progress of the work, that changes are required. We do not mean to be understood as holding that changes in the general plan of the work may be made at the pleasure of the board of commissioners, but we do mean to adjudge that changes may be made in details and in minor particulars. If the rigid rule for which the appellant contends were adopted, then the board could not change a window, a door, a chimney, or any like matter, and, certainly, the Legislature did not mean to establish a rule that would prevent such changes. Of course, no important general change in the plan of the building can be made, but a change in a matter of detail, such as the heating or lighting, may be rightfully made when required. If the board of commissioners secures and files plans and specifications so full and

specific as to show the character of the proposed building, and duly advertises for proposals, the county can not escape liability without showing that changes in important particulars were made. This conclusion is fairly supported by the case of *Bass Foundry, etc.*, v. *Board, etc.*, 115 Ind. 234.

Neither the county nor its officers can with reason or justice ask that it shall be presumed that the board of commissioners either violated the law or acted in bad faith in ordering changes in a matter of detail, such as that of heating a court-house; on the contrary, the presumption is that what was done was done rightfully and in good faith. It must, therefore, be presumed, in the absence of countervailing facts, that the changes respecting the steam heating apparatus were of such minor importance and so necessary that it was not only the right of the board to order them made, but that it was its duty to cause them to be made. The county is using and enjoying the property placed in its possession by the appellee in good faith, and the least that it can do if it would keep and enjoy the property without paying for it, is to show such facts as make it clearly appear that the acts of its board of commissioners were unauthorized or illegal.

It is argued with ability and plausibility that there was no promise on the part of the board of commissioners to pay the appellee for the heating apparatus. In our judgment the contention, plausible as it is, can not prevail. The facts surrounding the parties when the bond was accepted by the commissioners furnish the light by which the contract must be read. The county was unwilling to pay anything more to Miller, the principal contractor; it had already paid on account of the heating apparatus a considerable sum of money; it was willing to pay the appellee the "sum due and to become due;" the appellee was willing to complete the work and gave bond that it would do so. It can hardly be doubted that the parties meant that one should do the work and that the other should pay for it when it was done. The one did do the work and the other has received the

benefit. It must be implied that one should receive compensation and if this be the implication, then there is an implied promise. It is said, however, that the writing simply expresses a desire to advance money and does not even express a desire or willingness to pay money, but this certainly is a forced and unnatural construction of the language employed by the parties. It is not reasonable to infer that the commissioners understood that all that the appellee expected was "a desire to advance money," nor is it reasonable to infer that the appellee agreed to do work for any such a consideration. The cases of *Harmon* v. *James*, 7 Ind. 263, and *Johnston* v. *Griest*, 85 Ind. 503, lend appellant no support, for in these cases no consideration was shown, while here a full and valuable consideration appears. Here, there is a consideration fully expressed; in those cases there was none. The case before us is not ruled by the cases named, but by the principle asserted in *Long* v. *Straus*, 107 Ind. 94. It is important to mark the fact that not only did the appellee promise the appellant to do the designated work, but that it also gave bond with surety that it would do the work as promised. There was a promise for a promise, there was value previously received, and there was a bond covenanting that what was promised should be performed. No lack of consideration can be justly asserted, for the new bond executed direct to the appellant was itself a consideration, but it was not by any means the only consideration yielded by the appellee. We are satisfied that there was a promise upon a valid consideration moving to the promisor.

We are required to decide whether the promise is within the statute of frauds. If it is an original and not a collateral promise, then it is not within the statute. If it is not an original promise it is within the statute, for it is well settled that a contract not entirely in writing is verbal, and, therefore, voidable under the statute requiring collateral contracts to be evidenced by writing. There is here no written promise on the part of the appellant, although there

is a verbal assent to a written proposition of the appellee. *Higham* v. *Harris,* 108 Ind. 246; *Tomlinson* v. *Briles,* 101 Ind. 538; *Hackleman* v. *Board, etc.,* 94 Ind. 36; *High* v. *Board, etc.,* 92 Ind. 580; *McCurdy* v. *Bowes,* 88 Ind. 583 (585); *Board, etc.,* v. *Miller,* 87 Ind. 257; *Gordon* v. *Gordon,* 96 Ind. 134; *Pulse* v. *Miller,* 81 Ind. 190; *Board, etc.,* v. *Shipley,* 77 Ind. 553.

The promise of the appellant is an original and not collateral one. The consideration for the promise moved to the appellant, for it obtained a bond securing the performance of the contract, and obtained, also, the materials and labor of the appellee. The benefit accrued to the owner, and not to the original contractor. For what the owner received and retained it was bound in equity and good conscience to pay. *Bass Foundry, etc.,* v. *Board, etc., supra.* The appellant did not promise to pay for property received by Miller; its promise was to pay for property received by the county itself. The work was not completed when the promise was made, and Miller was not the debtor for the work that had not been done, however it may be as to the work that had already been performed. But even as to the work that had been done prior to the new promise, Miller was not the ultimate beneficiary from it, for, in the end, the benefit was the county's. The new promise secured the completion of the work, and this consideration directly and beneficially moved to the appellant. The new bond was an additional consideration, so that there was a complete and valuable new and additional consideration. The consideration yielded secured a new promise, and that promise was to do work for the promisor, and work, too, which was for its sole benefit. The appellant made no promise to answer for the debt or default of Miller, nor did it undertake to pay for property delivered to him. What the appellant did promise to do was that it would pay the appellee for work done in improving its property and fitting it for use and occupancy. This new promise was not collateral to any anterior undertaking, for it was not

to pay another's debt, nor was it to pay for property delivered to another, or for services rendered for another; on the contrary, the promisor was the sole beneficiary, and it was seeking to obtain value for itself and no one else. It seems clear that justice requires that the county should pay what it promised, for its promise was for its own benefit, and all of value that the promise secured accrued directly and completely to it as the owner of the property.

The principle which the well-reasoned cases establish is this: Where the owner of property undertakes to pay for work and materials to be subsequently done and furnished by a sub-contractor in order to secure the completion of a building in a case where the principal contractor has failed to carry on the work, the promise is an original one, and not within the statute of frauds. This principle is intrinsically just, and its enforcement does not in the slightest degree tend to the mischief the statute of frauds and perjuries was intended to repress. In the well-reasoned case of *Emerson* v. *Slater*, 22 How. 28, the Supreme Court of the United States gave the subject full consideration, and held that a promise similar to that made by the appellant was enforceable. It was there said: " But whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability." It is possible that the language quoted states the doctrine rather too broadly, but we shall not inquire whether it does so or not, for here we are not required to decide what the rule is where the promise relates to the past, inasmuch as we are concerned only with what related to the future at the time the new promise was made. This is so because the only question in this case is whether the appellee is entitled to

recover for work done and materials furnished after the new contract was made.    If the claim asserted was to the sum owing before the new promise was made, there would, perhaps, be more difficulty in solving the legal problem, but the sum due when the new promise was made was paid, so that the controversy concerns only the right to recover the sum that subsequently became due for work done and materials furnished.    We do not decide, we may say, by the way, that the sum due might not be recovered under the new promise had it not been paid; we simply decide the question before us, and that relates to matters that at the time the new promise was made concerned the future, and not the past.    The promises were in their nature severable, and the valid promise may certainly be enforced.    *Lowman* v. *Sheets*, 124 Ind. 416.

Resuming our consideration of the decided cases bearing directly upon the questions before us, we take up that of *Sext* v. *Geise*, 80 Ga. 698, where an owner promised to pay for materials furnished to complete a building then in progress of construction, and where it was said :    " If the supply of lumber was about to stop and the owner of the building procured its continuance by promising to pay for it, his undertaking was not collateral but original, and he is bound."    Another case is that of *Kutzmeyer* v. *Ennis*, 27 N. J. L. 371, where the court said, speaking of the owner of a building :    " He was interested in the completion of the work.    He received the benefit of it, and he had it in his power to indemnify himself for the advance to Ennis by withholding the money from the contractors."    In discussing a question which arose in a case very similar to the present, the Supreme Court of Vermont said :    " If in this case a third person make an entire, substantive and independent contract with him to perform the same service this may be enforced though not in writing, as it is not collateral."    But without quoting from the decisions, or commenting upon them, we cite some of them and affirm that our conclusion

that the appellant's contract is original and not collateral, is sustained by the overwhelming weight of authority. *Yeoman* v. *Mueller*, 33 Mo. App. 343; *Crawford* v. *Edison*, 45 Ohio St. 239; *Clifford* v. *Luhring*, 69 Ill. 401; *Bayles* v. *Wallace*, 56 Hun, 428; *Hagadorn* v. *Stronach, etc., Co.*, 81 Mich. 56; *Galveston, etc., Co.* v. *Hourein* (Texas), 9 S. W. R. 661; *Greenough* v. *Eicholtz*, 1 Mon. (Pa.), 433; *Fitzgerald* v. *Morrissey*, 14 Neb. 198; *Young* v. *French*, 35 Wis. 111. Of the cases cited by the appellant the only ones in point are *Ellison* v. *Jackson, etc., Co.*, 12 Cal. 542; *Noyes* v. *Humphreys*, 11 Gratt. 636; *Ware* v. *Stephenson*, 10 Leigh, 155. The Virginia cases are out of line with authority, and so is the California case. The latter cites as authority a single case, that of *Puckett* v. *Bates*, 4 Ala. 390, and that case is in conflict with the later and better considered case of *Jolley* v. *Walker*, 26 Ala. 690.

Our own cases very clearly recognize the distinction between original and collateral contracts. The earlier cases are collected in *Anderson* v. *Spence*, 72 Ind. 315, and it was shown that the case of *Green* v. *Cresswell*, 10 A. & E. 453, which asserted a doctrine contrary to that here declared, had been overruled in England and denied in America. In *Palmer* v. *Blain*, 55 Ind. 11, it was held that a promise by a third person to an execution creditor that if the creditor would satisfy the execution he would pay the judgment, was not within the statute. A very similar decision was made in *Frash* v. *Polk*, 67 Ind. 55. In *Aughie* v. *Landis*, 95 Ind. 419, it was held that a promise by a defendant to pay for work which the plaintiff agreed to do for a third person was not within the statutory inhibition. The case of *Shaffer* v. *Ryan*, 84 Ind. 140, illustrates the difference between an original promise and a collateral one, as does, also, the case of *Hackleman* v. *Miller*, 4 Blackf. 322.

The case before us is not dependent upon the doctrine of novation, so that the cases of *Langford* v. *Freeman*, 60 Ind. 46, *Krutz* v. *Stewart*, 54 Ind. 178, *Crosby* v. *Jeroloman*, 37

Ind. 264, and *Ellison* v. *Wisehart*, 29 Ind. 32, are not of controlling influence. It is not dependent upon that doctrine, for the manifest reason that what was done after the new promise was made was done for the promisor, for its benefit and at its request, and it is only for the value of what was so done that the appellee sues. As to the value of the work and materials furnished under the new promise the contract was one between the appellee and the appellant, and it did not concern any debt due from Miller to the former.

Judgment affirmed.

Filed May 14, 1891.