## CHARLESTON.

HOWELL *v.* HARVEY, EX'R.

Submitted March 17, 1908.   Decided March 16, 1909.

1. FRAUDS, STATUTE OF—*Pleading—Necessity.*
   The statute of frauds may be relied on as a defense under the plea of *non assumpsit.* (p. 312.)

2. SAME—*Original or Collateral Promise.*
   If a person make an oral promise to pay the debt of another in order to derive some benefit to himself thereby, which he did not otherwise have, such promise is an original undertaking and not within the statute of frauds; and in such case it matters not if the original promisor be not released. (p. 312 to 318.)

3. SAME.
   P. contracted to build a house for Harvey and sublet a part of the job to Howell who did a portion of it and quit because P. failed to pay him. Harvey told Howell to go on and finish the work and he would pay him. Howell completed the job and Harvey refused to pay him. In an action on the oral promise: *Held,* that the promise is an original one and, therefore, not within the statute of frauds. (p. 318.)

4. DECISION DISAPPROVED.
   The case of *Noyes' Ex'r.* v. *Humphreys,* 11 Grat. 636, considered and disapproved. (p. 319.)

Error to Circuit Court, Cabell County.

*Assumpsit* by A. C. Howell against H. C. Harvey, executor. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

BROWN, JACKSON & KNIGHT, T. W. PEYTON, and THOS. H. HARVEY, for plaintiff in error.

GEORGE I. NEAL and HOLT & DUNCAN, for defendant in error.

WILLIAMS, JUDGE:

W. W. Peyton contracted with H. C. Harvey in May, 1899, to build a house for him on the corner of 3rd Avenue, and 10th Street, in the City of Huntington, West Virginia.

Peyton sublet a part of the work to A. C. Howell who proceeded with his part of the work until June 22, 1899, when his men quit work, because Peyton had not paid him. Peyton failed. Harvey was away from home when the men ceased work. Howell says that on Harvey's return to Huntington he asked Howell why the work was not going on, and he replied that Peyton had not paid him, and he could not pay his men, and they had quit. He further says that Harvey told him "For God sake go on with this work; finish this post office building, if you don't do it, it will ruin us." Three others testified to substantially the same conversation, and that Harvey told Howell he would pay him; one of them, that he said "he would pay him every cent." Harvey denied making any such statement.

At this time Peyton owed Howell on the sub-contract something over $600.00. On the 24th day of June, 1899, the day of this alleged conversation, Harvey paid Howell $600.00, but says he did so on a written order from Peyton, which order was identified and filed as evidence. Howell completed the work about the 10th of August, 1899; and, Harvey refusing to pay him, he sued him in *assumpsit* in the circuit court of Cabell county upon his oral promise, on the 22nd day of January, 1902.

One W. M. Mertens, who had furnished material to Peyton to be used in the construction of the house, filed his bill in the circuit court of Cabell county on the 26th day of December, 1899, to enforce his mechanic's, or materialman's lien, and made Harvey, Peyton, Howell and others defendants to the bill. Howell answered, and averred his contract with Peyton; filed a statement of his account against Peyton showing a balance due him of $788.12; sought to enforce his mechanic's lien against Harvey's property, and prayed for a personal decree against Peyton. The itemized account, verified by Howell's affidavit, was exhibited with his bill. He also served notice of his lien upon Harvey. This suit was referred to a commissioner who reported that Harvey was not indebted to Peyton, but that, after allowing Harvey the "liquidated and unliquidated damages" to

which he was entitled against him, Peyton was indebted to Harvey in the sum of $18.71.

Howell was surety on Peyton's bond to Harvey for the faithful performance of his contract.

The circuit court held Howell's claim to be invalid as a lien. But some other mechanic's liens were decreed to be good. From the final decree in the case H. C. Harvey and another appealed, and on review of the cause by this Court, the decree of the lower court was reversed, and the plaintiff's bill dismissed for want of equity, but without prejudice to the rights of the parties claiming to hold mechanic's liens to sue Peyton at law. See case in 53 W. Va. 192.

The present action was brought in January, 1902, but the trial was delayed pending the determination of the appeal in the Mertens suit which was decided by this Court in April, 1903. Trial of this action was had, and on the 5th day of July, 1905, judgment was rendered in favor of plaintiff for $847.37 with interest and cost, upon defendant's demurrer to the evidence. It is now before us upon writ of error awarded to defendant.

Defendant relies upon the statute of frauds, although he has not pleaded it specially. In some jurisdictions it must be specially pleaded; but in this State and in Virginia it is not necessary, when the defendant has by plea, or answer, denied the contract declared on. This is an action of *assumpsit* and the defendant has pleaded to the general issue. The plea of *non assumpsit* is broader in its scope than most other pleas, and under it defendant may invoke the statute of frauds. Hogg's Pl. & Forms, sec. 220; *Rowton* v. *Rowton,* 1 H. & M. 92; *Fleming* v. *Holt,* 12 W. Va. 143; *Barrett* v. *McAllister,* 33 W. Va. 738, and same case in 35 W. Va. 103.

. The case having been decided upon a demurrer to evidence, the testimony of plaintiff and his other witnesses in regard to the oral contract made between him and defendant after the work had been partly performed, must be taken as true. This, then, proves the contract declared on in the special count.

The question then arises: Is the force of this evidence destroyed by the fact that after the work had been fully performed, plaintiff sought to enforce his claim as a mechanic's lien in the Mertens chancery suit? We think not. We do not think his

unsuccessful efforts, in that suit, are inconsistent with his present action. It was a circumstance to be considered by the jury in determining whether or not plaintiff had actually released this defendant from his oral promise. But if there was a consideration to support the promise, there certainly was none supporting a release from it. If this defendant was bound on his oral promise to plaintiff, it was upon a new consideration moving from plaintiff to him, and such promise need not, necessarily, have released the original contractor, Peyton, from his obligation to him. If the defendant was bound, then they were both bound to plaintiff, until he is paid.

In the case of *McLaughlin* v. *Austin,* 104 Mich. 489, which is a case almost identical with this one, the supreme court of Michigan, said: "It is possible for one to make a valid oral promise to pay a debt of another without releasing the original debtor, though it is not where the consideration moves to the original debtor alone. * * * * The fact that his claim of lien contained the sworn statement that he furnished material and labor in pursuance of a contract with Jones was proper evidence to be considered by the jury in determining whether the work was done in reliance upon a new undertaking with the defendant, but is not conclusive that it was not so done."

See also the following additional authorities: *Mallory* v. *Gillett,* 21 N. Y. 412; *Leonard* v. *Vrendenburgh,* 8 Johns. 28; *White* v. *Rintoul,* 108 N. Y. 222; *Nelson* v. *Boynton,* 3 Met. 396.

This fact was a matter of evidence for the jury on the question of plaintiff's intention to release defendant, and they must have resolved that question in favor of plaintiff.

Counsel for plaintiff in error also insist that the fact that plaintiff was surety on Peyton's bond to defendant is a matter entitled to great weight to show that plaintiff was not induced to complete the work because of defendant's promise, but that he did it to relieve himself from a liability greater than his loss of pay for services. This, also, was only an evidential fact to be considered by the jury on the question of intention. And, if this liability still existed at the time of this action, defendant had a right to recoup damages against this plaintiff resulting from his insolvent principal's failure to carry out his contract. But this he did not do.

The jury has found by its verdict that defendant made the promise declared on, and that plaintiff, by his subsequent unsuccessful effort to enforce his claim as a lien, did not release defendant from his promise; and, this finding being supported by the evidence, we think the court did right in refusing to set aside the verdict, unless as a matter of law the defendant is not bound by his oral promise to plaintiff. This question depends upon whether, or not, the promise was to answer for the debt of another, and is, therefore, not actionable.

The statute of frauds is one noted for its brevity and the terseness of its language, yet it has claimed the attention of the courts of last resort, both in this country and in England, more often perhaps than any other law. It is practically the same in all the states. It was enacted to relieve persons and their estates against false and fictitious claims, by requiring the highest order of proof to establish liability in cases where it is sought to recover against a person as the mere voluntary surety or guarantor of another. But it has been perhaps as frequently invoked to avoid liability as it has been relied upon to protect against injustice. The courts have said that it shall not be perverted and made the instrument of accomplishing a wrong, and have, therefore, in the vast majority of cases construed it to have no application in those cases where there is a consideration supporting the oral promise to answer for the debt or obligation of another, other than the release of the original obligor, or the extinguishment of the old debt, or promise. If the promisor derives a benefit from his oral promise which he did not otherwise have, his promise becomes a new and original one, and falls not within the purview of the statute. The rule by which to determine whether a promise is original, or collateral and without consideration, is thus stated in 29 A. & E. E. L. (2nd Ed.) 929: "An absolute promise to pay the debt of another is not within the statute though the liability of the original debtor still subsists where the leading object of the promisor is to subserve some pecuniary interest or business purpose of his own, and he receives a benefit which he did not before enjoy, and would not have possessed but for the promise."

In support of the text a large number of authorities are cited, among them, the case of *Emerson* v. *Slater*, 22 How. (U. S.) 28, which seems to be a leading case upon the subject. That case

is so very similar to the one now under consideration that we think it well to state it.

The plaintiff, Emerson, had been employed by a railroad company to build certain bridges. The company failed to make payments according to agreement, and Emerson refused to proceed with the work. The defendant was a large stockholder in the road and had leased to it large quantities of railroad iron and held an assignment of the earnings of the road to secure payments on his lease. The road could not operate, and there could be no earnings, until the bridges were completed. Under these circumstances the defendant orally promised to pay plaintiff, if he would go on and complete the bridges, which he did.

Defendant refused to comply with his oral promise, and plaintiff brought *assumpsit*. The court held his oral promise to be binding, and stated the law to be, that: "Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purposes of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability." The opinion further says: "Nothing is better settled than the rule that if there is a benefit to the defendant, and a loss to the plaintiff, consequential upon and directly resulting from the defendant's promise in behalf of the plaintiff, there is a sufficient consideration moving from the plaintiff to enable the latter to maintain an action upon the promise to recover compensation."

The case of *Myers* v. *Dorman,* 34 Hun. (N. Y.) 115, is even stronger in support of the rule, if any difference, than the one last above referred to. There Myers, the plaintiff, Stephen Dorman, the defendant, and one Taylor had each recovered several judgments against one J. L. Dorman which aggregated $1,839.87 on which executions were issued. The sheriff had levied upon the goods of J. L. Dorman under prior executions amounting to $2,432.55. On the day of sale it was agreed among these three judgment creditors of J. L. Dorman, that if Myers and Taylor should refrain from bidding and permit Stephen Dorman, the defendant, to purchase the stock of goods, he would pay them the amount of their judgments against J. L. Dorman.

The defendant did purchase the goods at $2,440.00, and there-after refused to pay the judgments of the other two men, where-upon Myers sued him. The jury found that this agreement was not made with any fraudulent intent; and the court held that the agreement was not within the statute of frauds because: "(1) He had not pleaded it as a defense to the agreement which was set out in the complaint. (2) His agreement was founded upon a new consideration, viz., the promise of the plaintiff and Taylor not to bid at a sale."

The Court in its opinion says: "The case is not within the statute, for the reason that the defendant's promise to pay the debt of the judgment debtor was founded upon a new considera-tion, to-wit, the promise of the plaintiff and Taylor above stated."

The case of *Wills* v. *Cutler et al.,* 61 N. H. 405, is also very much in point. In that case it appears that Otterson & Co. who were carrying on a foundry business became embarrassed for want of funds, and made a sale and transfer of their business to the defendants. At the time of this sale there were back wages due a large number of men employed in the foundry. Learning of the sale, they refused to go on with the work unless provision was made for their pay, whereupon one Mr. Reed, a member of the defendant firm, met a number of the men who had collected at the foundry and told them that "if they would go to work again, as before, the defendants would pay them the same wages that they had been receiving, payments to be made at the end of each week, and also the amount of the arrears due them for November on the 15th of January and one-half of the amount of the arrears for December on the 15th of February, and the other half on the 15th of March, following." On a suit brought by one of the workmen for the money due from the old firm, the court held the new firm liable, holding that the defendants' liability was on an original contract founded on a new considera-tion, and was not within the statute of frauds. The same prin-ciple had been declared in the case of *Brigton* v. *Angier,* 48 N. H. 420; following the case of *Emerson* v. *Slater, supra,* to which the court refers as a leading case.

*Elkins* v. *Timlin,* 151 Pa. St. 491, is the case in which the de-fendant had agreed to sell his own interest and the interest of his co-tenant in a tract of land to plaintiff, and when he presented

the deed of his co-tenant for his interest plaintiff refused to accept it fearing there might be judgments against such co-tenant; and the defendant, to induce him to take the deed, agreed orally to pay all the judgments of his co-tenant. The judgments did exist, and he refused to pay them and plaintiff sued. The court held that this promise was not within the statute of frauds, but was a new promise supported by a consideration which moved directly to the promisor.

It could hardly be supposed, in this case, that the oral promise of the defendant had the effect to release the judgment debtor.

In *Hale* v. *Stewart,* 76 Mo. 20, Stewart held a note against one Ide for $650.00 secured by a deed of trust upon Ide's property. Stewart aftewards assigned this note without recourse to Hale. Hale objected to the manner of assignment whereupon Stewart agreed orally, that if the note was not paid at maturity, he would pay it. There was a prior encumbrance upon the same land for which it was later sold. Stewart wanted to buy the land, but did not want to bid at the public sale, and promised Hale that if he would attend the sale and buy it in for him, he would pay off the aforesaid note. Hale attended the sale and bought the land at the price of $600.00 and had the trustee to make a deed to Stewart, and Stewart took possession of the land. The $600.00, at which price Hale bid in the land, was credited on the note of Ide to Stewart which he had endorsed without recourse to Hale. Stewart refusing to pay the note, Hale brought suit, and defendant relied upon the statute of frauds. The court held that the promise was not within the statute of frauds, that it was Stewart's new and original promise based on the consideration that Hale should attend the sale and buy the land for him.

The facts in the case of *Olderburg et al.* v. *Dorsey,* 102 Md. 172 (5 A. & E. Ann. Cas. 841, and note), are very similar to the case under review, and the decision in that case supports our opinion on the following propositions, viz: (1) Harvey's oral promise is an original and binding one; (2) both Harvey and Peyton were bound to Howell as original promisors; and (3) that Harvey had a right to recoup damages in this action, if he had suffered any, on account of Peyton's failure to comply with his contract on which Howell was his surety. However, Harvey made no effort to recoup damages.

The case of *Crawford* v. *Edison,* 45 Ohio St. 239, is another

case very much in point. The second point of the syllabus, which seems to combine both the law and the facts of the case, is as follows: "S. agreed with C. to furnish the material and build him a house for a specified amount. S. employed E. to put on the roof, eave-troughs, and conductor pipes, for a stipulated sum, to be paid when the work should be completed. When E. had done about two-thirds of the work, S. abandoned the job and left the county, without having paid E., or provided for his payment. E. then informed C. that he would not do any more work unless he was to be paid. Thereupon C. told E. to go on with his part of the work, and complete it, and he would pay him. E. accordingly completed his job, and charged the amount to C. *Held*, C's promise was not collateral, to answer for the debt of another, but was an original one, for his own benefit, and unaffected by the statute of frauds." The opinion refers to the case of *Emerson* v. *Slater, supra*. A similar case also is the case of *Clifford* v. *Luhring*, 69 Ill. 401.

The case of *Hooper* v. *Hooper*, 32 W. Va. 526, is very much in point. In that case it appears that Chas. E. Hooper owed one Hamilton $1.000. Said Hooper sold a stock of goods to one Casteel for $1,000 and took in payment a lot in the town of Grafton which, at said Hooper's request, was conveyed by Casteel to Hooper's father who, in consideration of the conveyance, promised to pay his son's debt to Hamilton. The father's promise was held to be original and binding. But notwithstanding the father's binding promise, the son was not thereby discharged of his obligation to Hamilton. See the opinion prepared by BRANNON, J., pages 534 to 558.

See, also *Young* v. *French*, 35 Wis. 111; *Swayne* v. *Hill*, 59 Neb. 652; *Garvey* v. *Crouch*, (Ky.) 35 S. W. 273; *Kutzmeyer* v. *Ennis*, 27 N. J. L. 371; *Bailey* v. *Marshall*, 174 Pa. St. 602; *Borchsenius* v. *Canutson*, 100 Ill. 82; *Patton* v. *Mills*, 21 Kan. 163; *Carraher* v. *Allen*, 112 Iowa 168; *Board of Com'r. &c.* v. *Steam Heating Co.*, 128 Ind. 247. The Indiana court in its opinion in the case last cited relies on the case of *Emerson* v. *Slater, supra*.

Counsel for defendant relies upon the case of *Noyes* v. *Humphreys*, 11 Grat. 636, which is, indeed, very similar to the case under review. Noyes was the owner of certain salt property and leased the same to one Thompson for ten years, reserving a large

rent. Thompson undertook to make extensive improvements upon the property and employed one Humphreys to do the work. Humphreys did a great deal of the work, and Thompson failed to pay him, and he said he would quit if he was not paid. Noyes, desiring that the work should proceed, said to Humphreys "Go on and finish it: I will pay you for it." Humphreys then completed the work, Noyes attending and giving directions during its progress through several months. Thompson and Humphreys thereupon had a settlement and it was ascertained that there was a balance due Humphreys of $454.78 for which Thompson executed his bond to Humphreys payable in nine months. Humphreys sued Noyes on his oral promise. Judge Allen in discussing the case says: "Original undertakings need not be in writing, not being within the statute. The difficulty is in determining under which head the undertaking in any particular case is to be classed. Where the party undertaken for is under no original liability, the promise is an original promise, and binding though not in writing; the promisor is the party immediately liable, and the undertaking is to pay or answer for his own debt or default, and not for another's."

In view of the facts, as they appear from the opinion in *Noyes* v. *Humphreys,* and in view of the many decisions hereinbefore referred to, we fail to see why the court did not decide the case otherwise than it did; because tested by the great weight of authorities, there was a new consideration moving from Humphreys to Noyes which ought to have made Noyes' promise an original one. We do not controvert the principle of law announced by the court in that case and in other Virginia decisions therein referred to; but we think the principle was incorrectly applied to the facts in that case, as we understand them from reading the opinion, and we do not feel inclined to follow that decision in opposition to so many other reputable authorities.

The case of *Radcliffe* v. *Poundstone,* 23 W. Va. 724, is also cited by counsel for plaintiff in error as authority on the question of Harvey's non-liability on his oral promise. But the facts in that case are very different from the facts in the present case, and it does not govern. The material facts in that case, briefly stated, are these: Radcliffe owed Poundstone and his wife $3,350.00 for which he had executed his note payable to them jointly. But the proof showed, and the court held, that the wife

of Poundstone was the beneficial owner of the entire debt, so that in applying the law the debt must be viewed as if the note had been executed to the wife alone. Some time after this note was given Radcliffe and Poundstone formed a partnership for the purpose of buying and selling coal, and each was to furnish an equal amount of money. Radcliffe was to advance the money necessary to commence the business, and, as the bill alleges, did advance $6,600.00. Radcliffe says that there was an agreement between them that one-half the money so advanced was to be charged against said note, and that the wife of Poundstone orally assented and agreed to this arrangement. The wife denied the alleged agreement on her part, or that she had any knowledge of it, and set up her title to the entire amount of the note. This statement shows clearly that there could have been no consideration for the wife's promise, assuming that she made it. The promise was not an inducement to the partnership, for it had already been formed; there had been no release of the husband from his promise, as one of the partners, to bear one-half the expense, for the bill sought recovery from both Poundstone and his wife. The court, on page 732, says: "Her promise therefore was not only without consideration, but it was collateral, and her husband continued bound."

When there is no new consideration for the promise it follows, as a matter of course, that the only other consideration for the promise to pay the debt of another would be his release from the debt, otherwise the promise would be *nudum pactum* and void, even if it were in writing and signed by the promisor; hence, it will be seen in those cases where the courts have held that the release of the orginal promisor is essential to the validity of the new promise, that there was no consideration whatever for the promise. *Gerow* v. *Riffe,* 29 W. Va. 462; *Mankins* v. *Jones,* 63 W. Va. 373.

But if the consideration is a benefit to the promisor, which accrued to him by virtue of the promise, it is an original undertaking and not within the statute, whether the original promisor be released, or not. This is the test applied by the United States Supreme Court in *Emerson* v. *Slater, supra;* and also by this Court in *Hooper* v. *Hooper, supra.*

It remains only to apply the test, or correct principle of law, to the facts in the present case. Is defendant's oral state-

ment to plaintiff, to go on and finish the job and he would pay him, collateral and, therefore, void; or is it original and, therefore, binding? What was the new consideration? Plaintiff was a sub-contractor with Peyton who had failed on the job; there was no privity of contract between plaintiff and defendant on account of the original contract between Peyton and defendant. Plaintiff was bound to Peyton only to do the work which he had originally agreed to do, and when Peyton failed to pay him he had a right to quit, and did so. But defendant was anxious to have the building completed in order that he might have the use of his building; and by reason of his promise to plaintiff he was enabled to have his building completed. Here, then, was a benefit moving directly from the promisee to the promisor by virtue of his promise, which he did not have without such promise; and the new consideration was sufficient to support the promise to pay what was then due as well as to pay for services to be thereafter rendered.

Finding no error in the judgment of the lower court, we affirm it.

*Affirmed.*

BRANNON, JUDGE:

I have no objection to the judgment given by this Court.

I desire to say, that, as I understand the intricate question of direct and collateral promise, where there is no benefit accruing to the promisor, the fact that the main debtor still is bound is a test, showing the promise of the new man to be collateral and not good without a writing; but where a benefit goes to that new man, his promise is direct and binding without a writing, though the original debtor still remains bound. 29 Amer. & Eng. Ency. L., 929; *Mankin* v. *Jones*, 63 W. Va. 373.