## Wytheville.

## WAY v. BAYDUSH.

### June 15, 1922.

1. FRAUDS, STATUTE OF—*Promise to Answer for the Debt or Default of Another—Construction of Promise—Questions of Law and Fact.*— Where there is any doubt as to whether the oral promise relied on is an original independent promise, or is a promise to answer for the debt or default of another, it is for the jury to determine the question in view of the surrounding facts and circumstances, in the light of which the promise is to be construed; but, where there is no such doubt, the construction of the promise is one of law for the court.

2. FRAUDS, STATUTE OF—*Promise to Answer for the Debt or Default of Another—Construction of Promise.*—The real character of a promise as to whether it is an original independent promise, or a promise to answer for the debt or default of another, does not depend altogether on the form of expression, but largely upon the situation of the parties. The surrounding facts and circumstances as well as the language used are important elements in determining the nature of the promise.

3. FRAUDS, STATUTE OF—*Promise to Answer for the Debt or Default of Another—Promise of Owner to Subcontractor—Instructions—Case at Bar.*—A landowner employed a general contractor to furnish all the materials and erect a building upon the land. Plaintiff had an oral contract with the general contractor to do the plastering for the building. Having heard that a mechanic's lien had been taken out on another house built by the general contractor, plaintiff was awaiting results before he would enter upon his contract with him. The landowner sought out plaintiff and said to him: "If it is money trouble you are hanging back on, you go ahead and finish that work, and look to me for the pay."

   *Held:* In an action by plaintiff against the landowner, it was error on the part of the trial court to tell the jury that the promise relied on was to pay the debt of the general contractor, and that unless in writing plaintiff could not recover upon it.

4. FRAUDS, STATUTE OF—*Promise to Answer for the Debt or Default of Another—Promise of Owner to Subcontractor—Instructions—Case at Bar.*—In an action by a subcontractor against the landowner, plaintiff relied upon the following oral promise of defendant: "If

it is money trouble you are hanging back on, you go ahead and finish that work and look to me for the pay."

*Held:* That the trial court should have instructed the jury that, if they believed from the evidence that the promise relied on was to pay the debt of the general contractor, there could be no recovery by the plaintiff, unless the promise was in writing, but that if they believed that the subcontractor did the work solely upon the promise of the landowner to pay for it, and did not look to the general contractor for payment after the promise of the landowner to pay therefor, then the promise of the landowner was an original undertaking on his part, and it was not necessary that it be in writing in order to entitle the plaintiff to recover.

5. FRAUDS, STATUTE OF—*Promise to Answer for the Debt or Default of Another—Promise of Owner to Subcontractor—Instructions—Case at Bar.*—In the instant case, where the question at issue was whether the promise of defendant, a landowner, to plaintiff, a subcontractor, that he would see him paid, was an original independent promise, or a promise to answer for the debt of the general contractor, it was proper to refuse an instruction that if the jury believed from the evidence that the landowner promised to see that the subcontractor was paid for the work in question, and that the object of the said promise was to subserve some pecuniary or business purpose of the landowner, involving either a benefit to himself or damage to the subcontractor, his promise was not within the statute of frauds and the jury should find for the plaintiff.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Thos. W. Shelton* and *Alfred Anderson*, for the plaintiff in error.

*Willcox, Cooke & Willcox* and *Levy & Mitchell*, for the defendant in error.

BURKS, J., delivered the opinion of the court.

E. C. Sharrar contracted to build for B. Baydush an apartment house and store for the sum of $17,800.

Sharrar was the general contractor and was to furnish all the materials and erect the building according to plan and specifications. Sharrar, by verbal contract, employed S. H. Way (the plaintiff in error) to do the plastering at $1,840. According to the testimony of Way, when the building was ready for the plastering he did not begin work, but remained away because he had heard that some one else had docketed a mechanic's lien against Sharrar and wished to see how things would develop before beginning to work for him. On October 7, 1919, Baydush came to his house between 6 and 7 o'clock in the evening and said to him "that he had leased the store to D. Pender Grocery Company, and it had to be delivered the 15th of the month. That was on the 7th then, and I was doing a job at Larchmont, and I did not care to give it up until I had finished, and Mr. Baydush seemed to be in a hurry, and he said to me, 'If it is money trouble you are hanging back on, you go ahead and finish that work, and look to me for the pay.'" He was not in a hurry about getting there and was hanging back on account of money, and would not have done the work but for the above promise from Baydush, but after that promise did commence the work and finally completed it, and it was for the work so done and materials so furnished that the present action was brought. Most of these statements of Way were denied by Baydush, but that is immaterial for the present purpose. At the trial there was a verdict for the defendant as a result of an instruction given at the instance of the defendant, and the refusal to give another instruction at the instance of the plaintiff. The ruling of the court on these instructions was duly excepted to, and is the basis of the assignments of error in the case.

The instruction given at the instance of the defendant and over the objection of the plaintiff was as follows: "The court instructs the jury that the promise relied on in this suit was to pay the debt of E. C. Sharrar, and unless the same was in writing the plaintiff cannot recover in this motion."

[1, 2] The main contention of the plaintiff in error is that this instruction took away from the jury the determination of a question that it was their special province to decide. Where there is any doubt as to what the "promise relied on" is, in view of the surrounding facts and circumstances, in the light of which it is to be construed, that is true (*Kanter* v. *Hofheimer*, 118 Va. 625, 88 S. E. 60; *Alphin* v. *Lowman*, 115 Va. 441, 79 S. E. 1029, Ann. Cas. 1915A, 863; *Conrad* v. *Ellison Harvey Co.*, 120 Va. 458, 91 S. E. 763, Ann. Cas. 1918B, 1171, 9 Ann. Cas. 895, 897); but where there is no such doubt, the construction of the promise is one of law for the court. *Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245, 108 S. E. 15; *Goldie, etc., Co.* v. *Bothwell*, 67 Wash. 264, 121 Pac. 60, Ann. Cas. 1913D, 849, 25 R. C. L. 490, sec. 73; 9 Ann. Cas. 895–7. It is manifest that the trial court took the view that the promise was definite and certain, and, waiving the conflict in the testimony and giving the plaintiff the full benefit of his testimony, regarded the promise to be construed as that couched in the language, "If it is money trouble you are hanging back on, you go ahead and finish that work, and look to me for the pay." This language, used under the circumstances hereinbefore detailed, the trial court construed to create a secondary liability, or a contract of guaranty, on the part of Baydush, and hence unenforceable unless in writing.

Way had reason to doubt the solvency of Sharrar,

the general contractor, and was "holding back on account of money," when Baydush came to him voluntarily and made the promise relied on.

"The real character of a promise does not depend altogether on the form of expression, but largely upon the situation of the parties and upon whether they understood it to be a collateral or direct promise." *Davis* v. *Patrick*, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826.

"The surrounding facts and circumstances as well as the language used are important elements in determining the nature of the promise." *Bank Note Co.* v. *Shrader*, 70 W. Va. 475, 74 S. E. 416, Ann. Cas. 1914A, 488.

"It sometimes happens, where real estate is being improved under a contract with the owner, that the contractor sublets the work or part thereof and after the default of such contractor, to induce the subcontractor to continue the performance of his contract, the owner promises to pay or see that the subcontractor is paid for his work. In such a case it seems, as a general rule, as respects work done by the subcontractor on the faith of such promise, that the promise is not regarded as within the statute, it being considered that the work was continued on the credit of the promisor. And it has been said that the principle which the well reasoned cases establish is this: where the owner of property undertakes to pay for work and materials to be subsequently done and furnished by a subcontractor in order to secure the completion of a building in a case where the principal contractor has failed to carry on the work, the promise is an original one, and not within the statute; this principle is intrinsically just and its enforcement does not in the slightest degree tend to the mischief the statute was intended to repress." 25 R. C. L. 522.

In *Emerson* v. *Slater*, 22 How. 28, 16 L. Ed. 360, it was held that "whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability." This holding has been followed in a large number of Federal and State courts, as will appear by reference to 5 Rose's Notes (Rev. Ed.) 247–9, and other books of reference. See also note 126 Am. St. Rep. 494; *Howell* v. *Harvey*, 65 W. Va. 314, 64 S. E. 249, 22 L. R. A. (N. S.) 1077; *Gibson County* v. *Cincinnati Steam Heating Co.*, 128 Ind. 247, 27 N. E. 612, 12 L. R. A. 502, and cases cited; *Cincinnati Traction Co.* v. *Cole*, 258 Fed. 169, 169 C. C. A. 237.

[3, 4] It is unnecessary for us in the instant case to go as far as the court went in *Emerson* v. *Slater*, *supra*, as there are circumstances under which the doctrine there announced should probably be qualified. 1 Williston on Contracts, secs. 470, 472.

In *Gibson County* v. *Cincinnati Steam Heating Co.*, 128 Ind. 240, 27 N. E. 612, 12 L. R. A. 502, the principal contractor for a building undertook to carry on the work and the owner undertook to pay for work and materials to be subsequently done and furnished by a subcontractor in order to secure the completion of the building. The promise was not in writing but was a verbal acceptance of a written proposition, and it was held that the promise was an original one, and that no writing was necessary. It was said that the principle involved was intrinsically just, and that

its enforcement does not in the slightest degree tend to the mischief the statute of frauds and perjuries was intended to repress. The case is chiefly valuable for its very full discussion and citation of authorities on the subject of when a promise is original and when it is collateral.

In *Crawford* v. *Edison*, 45 Ohio St. 246, 13 N. E. 80, a contract had been made by Smith to furnish materials and build a house for Crawford. Smith employed Edison to put on the roof and do certain other work for a stipulated sum, to be paid when the work was completed. When Edison had done about two-thirds of the work, Smith abandoned the job and left the country without paying Edison or making provision for paying him. Thereupon Edison applied to Crawford to know what was to be done about his bill, and stating that he would not go on further with the work unless he was paid. He testified that Crawford replied: "Mr. Edison, you need have no fear about your pay. You go right along and complete your job. There is enough owing to Smith and I will pay you." And later on the same day: "You need not have any trouble about that matter, as I will pay you as I said." Crawford denied making any such promise, but his wife testified that Crawford told Edison to go on and put up the spouting and he would see him paid from then on, anyway. Edison went on and completed the job and charged the amount to Crawford. It was held that the promise in this case was not collateral to pay the debt of another, but was an original promise for Crawford's own benefit, and was unaffected by the statute of frauds. To the same effect see *Nelson* v. *Boynton*, 3 Metc. (Mass.) 400, 37 Am. Dec. 148, opinion by Shaw, C. J., and *Clifford* v. *Luhring*, 69 Ill. 401.

In *Hall* v. *Alford*, 105 Ky. 664, 49 S. W. 444, a general contractor for a building was getting behind with his payments when a subcontractor applied to the owner to know whether he was safe about getting his money from the general contractor, and said to the owner that if he would not see that he got his money he would quit work and take other proceedings; thereupon the owner told him "not to get scared, but to go ahead with the work, and that he would see that all subcontractors were paid for the work performed, and the material men for materials furnished;" that in reliance upon this promise he went on and completed his job. In a suit by the subcontractor against the owner it was held that the promise was a distinct and independent obligation, for which he received a valuable consideration, and not within the statute of frauds.

In *Reisler* v. *Silbermintz*, 99 App. Div. 131, 90 N. Y. Supp. 967, the plaintiffs were subcontractors under S. to do certain iron work for the owner, who accepted an order drawn by S. for the amount due the subcontractors, conditioned upon the performance of the contract by S., who thereafter abandoned the contract; whereupon the owner orally agreed to pay the subcontractors the whole value of their work in consideration of their finishing the job, and it was held that the owner's promise to pay was an original undertaking and not within the statute of frauds.

*Howell* v. *Harvey*, 65 W. Va. 310, 64 S. E. 249, 22 L. R. A. (N. S.) 1077, contains a valuable discussion of many of the cases on the subject now under consideration. In that case Peyton contracted with Harvey to furnish material and build a house for him. Peyton sublet a part of the work to Howell, who proceeded with his work until June, 1899, when his

men quit work because Peyton had not paid him. Peyton failed. Harvey was away from home when the men ceased work. Howell says that on Harvey's return to Huntington he asked Howell why the work was not going on, and he replied that Peyton had not paid him, and he could not pay his men, and they had quit. ·He further says that Harvey told him, "For God's sake go on with this work; finish this post-office building, if you don't it will ruin us." Several other witnesses testified to the same effect. One witness says that he said that he would pay him every cent. It was held that this promise was an original undertaking made for the benefit of the owner, and was not within the statute of frauds; and further, that it was immaterial that the original promisor (the general contractor) was not released.

There are many cases to the same effect, but the citations made are deemed sufficient.

In *Noyes* v. *Humphreys*, 11 Gratt. (52 Va.) 636, the prior cases in this jurisdiction are cited and it appears from them that the holding in this jurisdiction is that if the original contractor remains liable and the undertaking of the new party is merely that of surety or guarantor, the undertaking of the latter is collateral and within the statute of frauds. We do not propose to depart from that holding in this case. In the case at bar, the evidence was conflicting on the subject of the promise, but the trial court instructed the jury "that the promise relied on in this suit was to pay the debt of E. C. Sharrar, and unless the same was in writing the plaintiff cannot recover in this motion." Now the promise relied on by the plaintiff was, "If it is money trouble you are hanging back on, you go ahead and finish that work and look to me for the pay." These words, of themselves, do not import any

collateral undertaking on the part of Baydush, but just the contrary. Way had an oral contract with Sharrar to do the plastering, but had not entered upon the performance of the contract. Having heard that a mechanic's lien had been taken out on another house built by Sharrar, Way was awaiting results before he would enter upon his contract with him. Baydush evidently had heard something of the same kind, for he went in search of Way after dark and finally found him at his home and said to him, "If it is money trouble you are hanging back on, you go ahead and finish that work and look to me for the pay." Upon this promise Way went to work the next day, but would not have gone except upon this promise. If this were all, the instruction of the court would have been plainly erroneous. But defendant in error relies upon the fact that, after Mrs. Way, wife of the plaintiff in error, had testified in chief that Baydush had said, "If the money is what you are holding back on, go on with the work, I need it, and I am in a hurry," she testified on cross-examination as follows:

"Q. You testified downstairs in the other court?

"A. Yes, sir.

"Q. At the other trial of this case?

"A. Yes, sir.

"Q. At that trial, you testified as follows: 'Yes, sir. He asked Mr. Way how soon he can start, and he told him he was very busy, and Mr. Baydush said, 'If it is money matters you are standing on, I will be responsible for the money.' That was what he said?

"A. Yes, sir."

In addition to this the defendant in error relied upon the fact that Way attended certain meetings of the creditors of Sharrar after he had thrown up the job, and after the building had been completed. Way

testified as to the object of these meetings and why he
attended, and undertook to show that his conduct did
not in any way show that he was looking to Sharrar
for his money. On this subject the evidence was
conflicting. The testimony simply raised a doubt as
to whether Way was still looking to Sharrar for his
money. This doubt made the question one of fact
for the jury, and it was error on the part of the trial
court to tell the jury that the promise relied on in this
suit was to pay the debt of E. C. Sharrar. The court
should have instructed the jury that if they believed
from the evidence that the promise relied on in this
suit was to pay the debt of E. C. Sharrar, there could
be no recovery by the plaintiff, unless the promise
was in writing, but that if they believed that Way
did the work solely upon the promise of Baydush to
pay for it, and did not look to Sharrar for payment
after the promise of Baydush to pay therefor, then the
promise of Baydush was an original undertaking on
his part and it was not necessary for the promise of
Baydush to have been in writing in order to entitle
the plaintiff to recover. *Mankin* v. *Aldridge,* 127 Va.
761, 105 S. E. 459.

[5] The following instruction was tendered by the
plaintiff: "The court instructs the jury that if you
believe from the evidence that the said Baydush
promised to see that the said Way was paid for the
work in question and that the object of said promise
was to subserve some pecuniary or business purpose
of said Baydush, involving either a benefit to himself
or damage to the said Way, his promise is not within
the statute of frauds and you shall find for the plain-
tiff." The court committed no error in refusing this
instruction. *Noyes* v. *Humphreys,* 11 Gratt. (52 Va.)
636, and cases cited.

For the error of the court in giving defendant's instruction No. 1 its judgment must be reversed, and the cause remanded for a new trial.

*Reversed.*